SIMMONS *versus* AUGUSTIN.

QUESTIONS IN THIS CASE.

*As to the competency of one to execute a valid convey-
ance of realty, in consideration of natural love and
affection, under a provision that the deed shall take
effect in futuro.*

*As to the title to lands, granted to one, and the heirs
of his body, between the issue of the donee, and a
purchaser.*

*The construction of the statute of* 1812, *upon the sub-
ject of estates in fee tail, &c.*

*The construction of a particular deed.*

1. In this State, the freehold of lands to take effect *in futuro*, may
be conveyed by a grantor to the grantee and his heirs, upon
the consideration of natural love and affection, without livery
of seizen, where the deed reserves to the grantor a life estate
in the premises; and such reservation will be construed into
a covenant to stand seized to the use of the grantee.

2. A deed "giving and granting" lands to one, "and the heirs of
his body forever, after the demise of the grantor;" held to
be sufficient in its terms for this purpose.

3. Where a deed of lands by one to his two sons, expressed a
limitation to the donees, "*and the legal heirs of their bodies
forever*;" held that such deed created an estate tail, in the
donees, and was embraced within the meaning of the act of
1812.

4. Under the statute of 1812, a limitation by deed, of real estate
to a succession of donees, will not be deemed valid without
the adoption of the terms prescribed in that statute; and a
clause, that in default of heirs of the body of the remainder
man, the estate shall revert to the right heirs of the donor in
*fee simple.*

5. To give a deed passing real estate, validity, under this sta-
tute, the limitation and reversion must be declared by express
words; and where a deed contains no clause adopting the
terms of the statute and the limitation there prescribed, the
donee takes an absolute estate in fee simple.

This was an action of trespass to try titles, brought in the Circuit Court of Autauga, by the next friend of Martha Augustin, an infant.

The lands, the subject of the suit, were held by the plaintiff in error, under a regular conveyance, by deed, from Thomas J. Augustin, the father of Martha : and she claimed, under a deed, made by her grand father, William J. Augustin, to her father, Thomas J., and his brother, Henry W. Augustin.— And the deed was as follows :

" The State of Alabama,     } Entailed deed of gift.
          Autauga County.  }

" Know all men, by these presents, that I, William J. Augustin, of the State and county aforesaid, for, and in consideration of the natural love and affection, which I bear to my sons, Henry W., and Thomas J. Augustin, as well as for the further consideration of one pepper-corn, to me in hand paid, by the said Henry W. and Thomas J., at or before the sealing and delivery of these presents, the receipt whereof, is hereby acknowledged, have given and granted, and, by these presents, do give and grant, unto the said Henry W. and Thomas J., and the legal heirs of their bodies, forever, after the demise of the said William J.—Also, that the following lands, to be described, and to be equally divided between the said Henry W. and Thomas J., are in no wise to be made subject to any debts, contracts or conveyances, that the said Henry W. and Thomas J. may make to any person or persons—as the true intent and meaning of this deed is, that the lands to be described, are to remain with them or their legal heirs, for-

ever.—All that fraction west of the Alabama river, section No. 23, in township, No. 17, of range, No. 12, containing three hundred and twenty acres—To have and to hold the said described land, unto them above mentioned, and in the manner above described.

" In witness whereof, I have hereunto put my hand and seal, this twenty-eighth day of September, in the year of our Lord, one thousand eight hundred and twenty-four, and in the forty-eighth year of the Independence of America.

"WILLIAM J. AUGUSTIN. [L.S.]

"Signed, sealed, and acknowledged, ⎫
        in the presence of,        ⎬
    " Griffin L. Hogans.
    " James D. Goss.
    " Nathaniel Haws."

The bill of exceptions, taken in the cause, stated, that the plaintiff below produced to the jury, the above deed; and proved the death of said William J. Augustin, and the death of the said Thomas J. Augustin; and, that she was the sole child of the latter.

The defendant, in defence, introduced a deed made to one Ezell, by Thomas J. Augustin; and a regular conveyance from Ezell, to himself, (Simmons,) of the lands, in question.

The court charged the jury, upon this evidence, that the said deed of William J. Augustin, was such as was authorised by the laws of this State; and, that, under the deed, Thomas J. Augustin, after the demise of William J., the father, took a life estate, *only*, in the lands; and, that Thomas J. Augustin

had no right to convey the premises, for a longer term; and, that no greater title than a life estate passed to Ezell and Simmons, under the deed, from Thomas J. Augustin.—That the infant child of Thomas J. was entitled to the premises; and, that if satisfied of her heirship, and the identity of the land, the jury must return a verdict for the plaintiff.

The exceptions further disclosed, that proof was made, that Henry Augustin was still living, and also, children of his body.—That, the counsel for the defendant requested the court to charge the jury, that the plaintiff, if entitled to recover the lands, was only entitled jointly with the said Henry, or with his children—the plaintiff having shewn, from the records of the Orphans' Court of Autauga, that commissioners had been appointed, under an order of that Court, to make partition of the lands, held under the deed; and that they had made due return, allotting the premises sued for, to the said Thomas J. Augustin, in his life-time—the Court refused to give the instructions, asked; and charged, that it was not necessary, for the said Henry Augustin, or his children, to join in the action here—no objection having been made to the regularity of the proceedings on partition.

It was further shewn, that in reference to some contrariety of evidence, as to the plaintiff being in existence, at the time of the death of Thomas J. Augustin, the court was requested, to charge, that, if the jury believed that the plaintiff was not in being, at the time of her father's death, then the lands mentioned in the deed, would revert to the right heirs of the donor. The court refused, and informed the jury, that it was indifferent, whether, at that

time, Martha, the child, was alive, or not: her rights were the same; and, she was equally entitled, under the deed of the ancestor.

A verdict was thereupon rendered, for the plaintiff in the action; and an appeal, by the defendant, prayed to this court.

*Mr. Hopkins,* for appellant.—The statute declares, that every estate tail that existed at its enactment, or might afterwards be created, should be a fee simple. No one can doubt the effect of the statute upon the estates tail, which had been granted before its passage. It was to convert them into estates in fee simple, and to give the fees to the persons, who were then tenants in tail. The proviso was prospective in its operation—it authorised future conveyances to be made, in the mode that is prescribed in it; but, such conveyances must be of the estates of those who might make them, and could not affect the right to a fee simple, which the statute gave to him, who was tenant in tail at the time of the enactment of it. As the statute declares, that every estate tail, created after its passage, shall be a fee simple, in the donee, in the same terms, in which it changes every estate tail, that then existed, into a fee simple, the conclusion cannot be avoided, that the legislature intended, that every grant, which might be made after the enactment of the statute, in the same language of those that it converted into pure fees, should convey a fee simple to the grantee. In a grant of an estate tail, there is but one limitation. Even, if a grant be made to A, for life, and the remainder to the heirs of his body, the legal effect of it, accord-

3 v. P.                    10

ing to the rule in Shelly's case, is that it is one limitation of an estate tail to A. Such a grant, existing at the date of the statute, was changed, by it into the conveyance of a pure fee, to him, who was tenant in tail; and, just such a grant, made since, the legislature intended should convey the fee simple to the grantee—because they have said it should do so.

A conveyance, founded upon the proviso of the statute, is a different thing from a simple grant, consisting of one limitation only, of an estate tail. In a coveyance, authorised by the proviso, there must be three limitations. If there be two living donees in the grant, to whom the estate is successively limitted, there must be a limitation of a certain, separate and exclusive interest in the estate to the first—because his interest must be ascertained by the conveyance, and at the limit appointed for its termination, would be the commencement of the interest of the succeeding living donee. If there be but one living donee, his interest must be granted with certainty, because it is separate and exclusive of the estate, limited to the heirs of his body; as the interest of the first living donee is separate from, and exclusive of that of a succeeding living donee.

In a conveyance, therefore, to one living donee, the point at which his interest must terminate, must be described----because it is the only feature, in such a grant, which shows the line of separation, between the interest of the living donee, and that intended, by the remainder, for the heirs of his body.

If a grant be merely to A, and the heirs of his body, it would be uncertain, although the third limitation, required by the proviso, might be inserted, at what time the grantor intended the interest of the

heirs of the body to commence—whether at their birth, or at the death of their parent. So, if there were a grant, merely to be enjoyed by A, first, and next by B, who were both living, without ascertaining the quantity of the interest of each, the limitation would not be made, as the statute requires.

Under the proviso, a term of years, as well as a life estate may be limited, to a living donee. In a conveyance, with three limitations, made pursuant to the proviso, the rule in Shelly's case, would not be applicable—although the first might be to the living donee, for life; because a rule of the common law, cannot operate upon limitations which the proviso authorises to be made in a conveyance, introduced by the proviso. Such a conveyance, with three limitations, the last being, as the proviso directs, to the right heirs of the donor, would not be an estate tail—because the proviso distinguishes such a grant, from the grant of a fee tail. But, such a conveyance, without the proviso in the statute, would be a fee tail, and, consequently a fee simple. Every statute should be so construed, as to give effect to every part of it.

The intention of the legislature, was, that some estates tail, created after the passage of the act, should be fees simple. They have declared, that all should be; but, if any one granted since the enactment of the statute, must be a pure fee, then all, created by the same words, must be.

The intention of the legislature, was, that all fees tail, created after the act, should be as pure fees, as the fees tail, existing at the date of the statute, were made, by the effect of it.

But, according to the construction of the statute,

given by the counsel for the defendant in error, no estate tail, created since its enactment, is a fee simple : every grant of a fee tail, is an estate for life, to the donee, and in fee simple to the heirs of his body. This exposition of the statute, is made, regardless of the express declaration, in the act, that every estate tail, created after its passage, should be a fee simple; and, as though the statute contained no such enactment. The construction denies any effect to the body of the statute.

If every conveyance of a fee tail, made since the statute, without any other limitation in the deed, be deemed a fee simple, effect will be given to the body of the statute ; but, if the deed, creating the estate, have the three limitations, which the proviso is believed to require----or, at least, two limitations, one of an estate tail, and the second, of the estate to the right heirs of the donor, in the event of the death of the donee, without heirs living at his death, it would present a case, upon which the proviso would take effect.

Without the proviso in the act, the creation of a fee tail, would transfer the fee simple, from the donor to the donee, although the latter might never have an heir of his body. With the proviso, the donor has power, in the event of the donee's having no heirs of his body, to limit the estate to his own right heirs.

Our construction of the statute, therefore, gives effect to both the body, and the proviso of the statute. The power offered by the proviso, may be exercised, or rejected, as the donor may choose. If he make a grant to A, and the heirs of his body, he gives what was formerly a fee tail, but, under the statute,

it is a fee simple; and, if the deed have no other limitation, there is no reversion in the donor. But, he may, in the same deed, and, as a part of it, in virtue of the power of which the proviso is the source, limit the estate, in the event which has been mentioned, to his own right heirs. Should he do so, he would not part with the fee simple---he would retain it, till heirs of the body of the donee should be ascertained---to whom, should there be any, the fee simple would pass, in virtue of the limitation to them : should there be none, the fee simple would pass to the right heirs of the donor, in virtue of the limitation over.

It has been asked why we insist that the proviso requires the limitation to the right heirs of the donor? Does not the reversion, upon the creation of a fee tail, remain in the grantor; which may, at some future time, return to him, or his right heirs? In England now, and in this country before the statute, the creation of a fee tail, was the grant of less than the whole quantity of interest in a fee simple, and while it was so, a grant of a fee tail left an interest in the grantor, which might return to him or his heirs, *without a limitation to them,* and which he, or they, might sell. But, since the statute, a grant of a fee tail, in this State, if there be nothing more in the deed than is necessary to create an estate tail, is a grant of a fee simple.

The statute has made a grant to A, and the heirs of his body, or to one for life, and the remainder to heirs of his body, as appropriate to convey a fee simple, as one to him and his heirs is. The same effect must now be given to a grant to one, and the heirs of his body, as to a grant to one and his heirs.

The same construction must be put upon a deed containing the former words, as though the effect allowed to the words by the statute, were, and always had been given to them by the common law. The truth of the proposition, that upon a grant of a fee tail, which, according to the English law, leaves an interest in the grantor, which will be preserved without a limitation of it to his own heirs, it is unnecessary to make such a limitation, does not prove that, upon a grant in fee simple, in this State, which, unaccompanied by any other limitation, leaves nothing in the grantor, it is unnecessary to make such limitation as the proviso requires, to the donor's right heirs. A grant in fee tail, is here a grant in fee simple, which will pass the whole estate of the donor from him to the donee, unless there be an additional limitation in the deed to his own right heirs, the effect of which would be to retain the fee simple in himself. If such a limitation were not authorised by the statute, the fee simple could not be prevented from passing to the donee by any common law deed. The common law permits a person by executory devise, to grant a fee simple to a devisee, and by the same devise, to limit the same fee to another person, in the event of the first person dying without *heirs living at thr time of his death.* But if the devisor devise in fee simple, and omit to make a proper limitation over of the same estate, the first devise carries the whole estate—the fee simple. This right to devise a fee simple, and to modify the devise by another limitation in the will of the devisor, is peculiar to executory devises. Grantors by deed have no corresponding right. (Fearn on Remainders and Executory Devises, 443, '4.)

Our statute has given to grantors by deed, a simi-
lar right, and it must be exercised as if it were deriv-
ed from the common law—it must be exercised as
the right to devise a fee simple, and then to qualify
the devise by a limitation over it.   As a devise of a
fee simple, without any limitation over, passes the fee
simple from the devisor to the devisee: so a grant by
deed under our statute, in fee simple, without any
limitation over, must pass a pure fee to the grantee
or donee.

If our legislature had intended that the creation of
an estate tail, should give a life estate to the donee,
and a fee simple to the heirs of his body, our act, in-
stead of being as it is, would be like the statute of
New Jersey, by which such an effect is expressly
given to estates tail.   Had such been their intention,
the statute would have given in the fees tail that then
existed, estates for life to the donees, and in fee sim-
ple to their heirs.

The case of an estate tail existing at the passage
of the act, with a limitation in the deed, that created
it to the heirs of the donor, which the counsel for
the defendant in error has stated, as an instance in
which the whole fee simple was vested, by the effect
of the statute, in the donee, does not show that our
first proposition is untrue ; the meaning of the propo-
sition is, that every grant that existed at the passage
of the act, and contained words *proper* and *necessary*
to create a fee tail, was changed, by the act, into a
fee simple; and that every grant made since, if
it contain the same *proper* and *necessary* words to
create a fee tail, is a conveyance of the fee simple.—
Before the act, a limitation of the reversion to the
donor's heirs, in a grant of a fee tail, was useless and

inoperative. The reversion belonged to him and was as well secured to him and his heirs, by operation of law, without as with the limitation. But, since the act, a grant, in words that before created an estate tail, is a conveyance of a fee simple, unless a limitation to the grantor's heirs be added, to retain the fee simple in the grantor, till it be ascertained whether the donee shall have heirs of his body to take it. A devise, before the act, of a fee tail, left a reversion in the devisor; but now it would convey the fee simple. As a devise is a coveyance, there might be a devise under the proviso of a fee simple, in words which formerly created a fee tail, with a limitation to the devisor's heirs, the effect of which would be to prevent the fee simple from passing from the devisor till the devisee should have heirs of his body. If a grant were made to A and his heirs, with a declaration of the grantor, in the deed, that he should have no power to convey, or to charge the estate with his debts, it would vest the fee simple in A, and the restraint would be void. As the grantor had legally conveyed the whole estate to A, and expressed the intention that he should never part with it, a court could not determine that a life estate only had been conveyed, or that the grantor had expressed what he had not—an intention that the grantee should have a life estate only. In this case a fee simple has been granted, in words, made proper by the act, to convey one. The restraints which the grantor desired to impose, are void. The grantor has not expressed his intention that his son should have a life estate, but he has said his intention was, that the estate should *remain* with his son, and his heirs forever; showing he intended what the law does not per-

mit, that his son should first have the whole interest in the estate, and after his death the heirs of his son should have the whole interest. If the son of the grantor had died without having had a child, can any one doubt that the land would have belonged to the son's estate? But if it be a life estate in the son upon his death, without having had any children, it would belong to the estate of the grantor.

*Mr. Goldthwaite*, for appellee.—The defendant in error readily admits, that the statute intended to change all fees tail, which existed as such at the time of its passage, into fees simple, no matter by what words they had been created. It might well be questioned, however, whether the legislature possessed the constitutional power to divest the grantor of his estate in reversion, or the issue in tail of their estate in remainder, particularly in cases where it had become vested by their being *in esse.* Without adverting to this question, it may be assumed, that the enacting words of this statute are sufficient to change all fees tail then existing, into fees simple.

With this admission, the consequence contended for by the plaintiff in errror does not follow; his proposition is, "that the legislature intended that any grant which might be made after the enactment of the statute, in the same language of those which by it were converted into pure fees, should also convey fees simple to the grantees."

Let this proposition be examined. Previous to the statute, a grant to A, and the heirs of his body, would have left a reversion to the grantor and his

3 v. P. 11

heirs.   So would a grant to A for life, with remainder to the heirs of his body.   The reversionary estate of the grantor, in both of these cases, would arise by implication, but they would, nevertheless, have been pure estates tail.   Would the addition of words expressing this reservation of the interest of the grantor, have changed the character of the estate granted, or have changed it from a fee tail to something else? Let us see; a grant to A, and the heirs of his body, and in default thereof, to the right heirs of the grantor.   Would not this be as pure and absolute a fee tail as either of the other estates?   If this would not be an estate in tail, what would it be?   And, if such an estate had have existed, at the passage of the act referred to, would it not, by its operation, have been changed into an estate in fee?   And can any one assert, that if such an estate was *now* to be created, that it would, by the operation of that statute, be changed into an estate in fee simple?   For it will be observed that it is in the very identical words of the exception of the statute.   Therefore, the proposition of the plaintiff in error, cannot be true.

The next position of the plaintiff in error is, that all the various limitations introduced into the exception of the statute, must be strictly pursued in the indentical words.   He even contends for a step beyond this, that the termination and commencement of the successive estates, must be determined by the *words* of the grant.   Now it will readily be admitted, that it must appear to have been the grantor's intention to limit the estate of the first, or each successive donee, but that the manner and words of expressing this intention, can make no difference; that any words may be made use of, and whenever

the intention can be ascertained, that intention will be carried into effect. There can be no doubt but that a grant in the very terms made use of in the statute, would be effectual to convey an estate to the issue of the donee; and yet, according to the argument submitted, it would not be sufficient for that purpose, for two reasons, first, because no time would be shewn when the estate of the first donee was to terminate, or the estate of the issue to commence. Second, a gift to A, and the heirs of his body, and in default of such heirs, to the right heirs of the donor, would, it is contended be defective, and pass nothing to the heirs of the body of A, because it did not state when the interest of A was to terminate, and because it did not shew when the interest of the heirs of the body of A, was to commence—whether at their birth or at the death of A. It would be likewise defective, according to the argument of the counsel for the plaintiff in error, because it did not specify that the heirs of A, must be heirs living at the time of his death. Now both these matters are supplied by intendments of law. A, shall take the largest estate which he can take by the words of the grant, which shall be most favorably construed for him, and the heirs of his body can not be known till his death, *nam nemo est hæris viventis.* It is not conceded, that, if a grant was made to A and B, to be enjoyed by A first, that the same would necessarily be void, because the legal intendment of such a grant would be, that A should have the greatest estate which the words would give to him, which would be a life estate; no words of procreation being used, he would then take a life estate, and B would take a life estate after the death of A.

The next proposition of the plaintiff in error, is, that the intention of the legislature, was that some estates tail, created after the passage of the act, should be estates in fee simple ; and, if any one fee tail, granted since the enactment of the statute, must be a fee simple, then all fees tail, created by the same words, must be fees simple, also.

Perhaps there is nothing in this proposition, which calls for direct refutation : it might safely be admitted that the legislature did intend to make some fees tail, created after the statute, fees simple, and, the consequence would be] inevitable, that if any were so intended, all, created in the same language, would be so, too.   But, wherever the intention of the donor was clear, that the first donee in tail, should only take a life estate, and that the estate should pass, through him, to the heirs of his body, the statute could have full operation, both in the creating clause, and in the proviso.   Although I am by no means clear, that all estates tail, created after the passage of the statute, should not be fees simple, in the first generation, still, such a construction could be given, as would avoid this difficulty : although, it might be held, that some estates tail, created after the passage of the statute, must, by it, be turned into fees simple, it, by no means, follows, that all must.

If the donor were to grant to A, and the heirs of his body, without shewing, by any words, his intention to limit the estate to A, it might be doing no injustice to say, that this estate tail, should, by the operation of the statute, be turned into an estate in fee simple ; but, if the grantor, by the use of any words, expressed his intention that A shall not have more

than a life estate, then that intention could be carried into effect, and no violence done to the statute. A grant to A, for life, remainder to heirs of his body, would express the intention of the grantor, and would convey the fee simple to his heirs.

So a grant, in the terms of this donation, where the intention is so clearly expressed, that the first donee shall take nothing but a limited estate, would shew a strong case, where the intention of the grantor should be carried into effect.

Any other construction than this, to be given to the statute, would, in effect, be saying, that no matter how plainly soever, the intention might appear, yet, unless that intention was expressed, in the technical language of the statute, no effect should be given to it: and, thus, in effect, say to every citizen in the community, that he should employ, not merely a conveyancer, but the ablest counsel in the community, to give effect to his donation.

The fourth proposition of the plaintiff in error, is, that the intention of the legislature was, that all fees tail, created after the passage of the act, should be as pure fees simple, as those fees tail, which existed at the date of the statute, were made, by the effect of it.

This construction of the statute, would entirely destroy the effect of the proviso—for, it is clear, that the estate, designated in the proviso, is a fee tail; and I think, it has been made to appear, that an identical estate with the one in the proviso, would, if existing at the date of the statute, have been turned into a fee simple. The words of the statute are, "every estate, which exists, in fee tail," shall be a fee simple; no exception, whatever, is made: but, as to estates,

hereafter to be created, a modified estate tail may be permitted to exist.

In relation to the only other point assumed by the argument of the plaintiff in error—that this case is to be governed by the same rules as apply to the case of executory devises, where a fee simple is limited on a fee simple, it is not perceived what application the one has to the other.—In the case of a limitation over, by way of executory devise, it does not follow, that, because the devise over is too uncertain, to have any operation, that it would enlarge a previous estate granted; and, I might here ask to show the whole want of application of the last point, if a limitation over, to one of the donee's right heirs would not be good.

Suppose a grant to A, for life, remainder to the heirs of his body, and, in default of such heirs of his body living, at the time of his death, to the eldest son of the grantor, in fee, would not such a limitation be good?

To conclude, the construction, which the defendant in error insists, should be given to the statute, is this, that by the enacting clause of the statute, all estates tail were changed into fees simple.—That the proviso of the statute was not intended to operate, nor did it operate on estates tail, as then existing; but, that it permitted them to be afterwards created, so as to vest a life estate only, in the first donee, and an estate in fee simple, in the heirs of his body, if he had any such, living, at the time of his death— and, if he had none, it reverted to the grantor or his right heirs, in fee: that, this reversion was an estate that might either arise by express limitation, or by operation of law; and, that the grantor might vest

the reversiou, bp such devise, or otherwise, in whom he chose.—That an estate tail, created after the passage of the act, would perhaps, be turned into a fee simple, unless the donor should, by some express words, indicate that the first donee should only take a life estate; and, that whenever such intention was expressed, or clearly indicated by the terms of the grant, that it should and ought to be carried into effect.—That, the evil intended to be prevented, was a perpetuity of estates, not to prevent a provision for grand children—that this object is permitted and sanctioned by the legislature; and, it seems, that it should be the province of the courts, to advance this object, by giving full effect to the intention of the grantor.—That it would be manifestly unjust, because the donor, in this case, perhaps, intended to go further than the law permitted, that he should not provide for his grand-children, which was clearly one of his objects.—And, that it would be sacrificing his intention, entirely, to permit an estate, which, he most unquestionably, intended to be for no greater period than the life of his sons, to be turned into a fee simple.

SAFFOLD, C. J.—The action was trespass to try titles, instituted by Martha Augustin, an infant, by her next friend. The object was to recover of Simmons, the premises in dispute, and damages for the detention.

A recovery was had accordingly, with a view to reverse which, Simmons prosecutes this writ of error.

The bill of exceptions shews that the claim in favor of Martha Augustin, was derived from a deed of

gift, executed by her grandfather, William J. Augustin, on the first of September, 1824, whereby the land now in question, with other parcels, (which others have, by partition been allotted to another and this said Martha's deceased father,) were conveyed, in an informal manner, as follows:

"Know all men by these presents, that I, William J. Augustin, of," &c. "for, and in consideration of, the natural love and affection which I bear to my sons, Henry W. and Thomas J. Augustin, as well as for the further consideration of one pepper corn, to me in hand paid," &c. "have given and granted, and by these presents do give and grant, unto the said Henry W. and Thomas J., and the legal heirs of their bodies forever, after the demise of the said William J. Also, that the following lands to be described, and to be equally divided between the said Henry W. and Thomas J., and are in no wise to be made subject to any debts, contracts and conveyances that the said Henry W. and Thomas J. may make to any person or persons; as the true intent and meaning of this deed is, that the lands to be described are to remain with them and their legal heirs forever." (After here describing the land, the deed proceeds:) "To have and to hold the said described land unto them above mentioned, and in the manner above described. In testimony," &c.

The plaintiff below further proved the death of Wm. J. and of his son Thomas J., and that she was the sole child of the latter. The defendant below, then produced a deed, made to John Ezell, by said Thomas J., and a regular conveyance, from Ezell, to himself.

Upon this evidence, the court charged the jury, that the deed of William J. Augustin, was such as was permitted by the laws of the State : and that, under said deed, Thomas J. Augustin, after the demise of his father, took a life estate only, in the said estate ; and that he had no right to sell or convey said premises, for a greater period.—That no longer title than the life estate of the said Augustin, passed to said Ezell and Simmons, under their purchase of said premises, from Thomas J. Augustin.—That the infant child of the said Thomas J. Augustin, was entitled to said premises ; and, that, under the law, arising from the deed of the said William J. Augustin, the jury must return their verdict for the plaintiff, if satisfied of the heirship, and identity of the land in question.

On the trial, it was also proved, that Henry W. Augustin was still in life, and had children living. The counsel for the defendant requested the Court to charge the jury, that the plaintiff, if entitled to recover the land in question, was only entitled jointly with the said Henry, or his children.

The plaintiff having produced an order of the County Court, appointing commissioners, to make partition of said land, and also, produced, from the record, the return made by said commissioners, and proved, that the land, described in the plaintiff's declaration, was allotted to the said Thomas J. Augustin, in his life-time, the court refused to charge, as requested : and, charged the jury, that it was not necessary, that the said Henry, or his children, should join in the suit—no objection being made to the regularity of the partition.

3 v. P.          12

Some of the witnesses testified that the plaintiff below, was not in being, at the ttme of her father's death—others, that she was previously born.   On this contrariety of testimony, the defendant's counsel requested the Court, to charge the jury, that if they believed the plaintiff was not in being, at the time of the death of the said Thomas J., her father, that, then, the lands in contest, reverted to the right heirs of the donor—which charge the Court refused, and charged, that, whether the plaintiff was in being, at the death of Thomas J., or was born afterwards, her rights were the same, and she was equally entitled, under the deed of her grand-father—to all which the defendant excepted.

It is here assigned as cause of error—that the Circuit judge instructed the jury, as above stated, and refused to charge them, in the different manner, as requested.

Having reference to the course of the argument, and the principles of law, necessarily involved in the controversy, the following questions are believed to embrace the entire merits of the case.

First—Was it competent for William J. Augustin to execute a valid conveyance of a free-hold, to his sons, in consideration of natural love and affection, without livery of seizen ; but, under a provision, that the deed should take effect, not *in præsenti*, but, after the death of the grantor : if so, is this deed sufficient for the purpose?

Second—Do the expressions of the deed, import an estate tail—such as the statute of this State declares to be an absolute fee :  or, are the limitations, authorised by the statute, sufficiently expressed, to

render them valid, as such, and deny the grantees the power of alienation?

1. So far as seizen of the premises, at the time of the grant, may be deemed material, it may well be assumed, that the grantor was then in the quiet enjoyment. The contrary does not appear: no opinion of the Court is shewn to have been expressed, or requested, or any question raised, on the trial, respecting it. We cannot, therefore, presume any such deficiency of proof.

The language of the deed, viz: " Have given and granted, and by these presents, do give and grant, unto the said Henry W. and Thomas J., and the legal heirs of their bodies, forever, *after the demise of the said William J.,*" &c. is believed sufficiently to imply a reservation of the premises to the use of himself, the said William J. during his life, and until the grant should take effect in favor of the grantees. The force and effect of the words "after the demise of the said Wm. J." is the same as any more formal reservation of this interest would be.

In *Jackson* vs. *Swart,*[a] it was held that a deed of [20 John.R. 85.] bargain and sale for a pecuniary consideration, of a fee, to commence *in futuro,* will operate as a covenant to stand seized to the use of the persons within the consideration, according to the intention of the party, without any technical or formal words for that purpose. There, the deed was executed by husband and wife, the title being in the former, and the latter joining in the deed merely to release her claim of dower. Following the description of the premises, in the deed, were these words: " It is understood that the parties of the first part, reserve to themselves the use of the premises during their natural lives."

On this clause the court also ruled that the deed could not operate as a reservation or exception in favor of the wife, who had survived, for the reason that she had no sufficient title or interest in the land; yet that it had effect and operation of a covenant to stand seized to the use of the husband during his life, and after his death to the use of his wife for her life. It was there also maintained that the language of the reservation was sufficient; that, for this purpose no technical words are required, "such as that the grantor covenants to stand seized to the use of A," &c.; but that any other words will create a covenant to stand seized, if it appear to have been the intention of the party to use them for that purpose. The authorities also show that the application of this doctrine is not confined to conveyances on valuable consideration.

7 Co. 133. In *Bedell's case*,[a] the facts were that B was seized, and he and his wife, in consideration of the natural love and affection which he had to his sons, and for their better preferment and advancement, convenanted to stand seized of the premises conveyed to the use of himself for life, and after his decease to the use of his wife for life; and, after their death, of one moiety to the use of one son, and of the other moiety to the use of the other son in tail. The question was, whether any use arose to the wife; and it was resolved, that if a man covenant to stand seized to the use of his wife, son or cousin, it shall raise a use without any express words of consideration; and upon writ of error the judgment was affirmed, by all the judges of the Common Pleas and Barons of the Exche-

2 Str. 934. quer.

The case of *Goodtitle* vs. *Petts*,[a] is to the same ef-

fect; and in *Paget's* case,[b] it was decided, that in such case, a use will arise to those who are within the consideration, though not to those who are strangers to it.[c]

Sergeant *Williams*, in his notes on *Saunders*, (*Chester* vs. *Willan*,)[d] sustains the authority of Co. Litt.[e] that the word "grant" is of general extent, and may amount to a grant, feoffment, gift, lease, release, confirmation, or surrender; and that it is in the election of the party to use it to which ever of these purposes he pleases. He cites the case of *Crossing* vs. *Scudamore*,[f] where a father seized in fee, made a deed to his daughter, enrolled within six months, by which, in consideration of natural love, augmentation of her portion, and her preferment in marriage, and other good and valuable considerations, he gave, granted, bargained and sold, aliened, enfeoffed and confirmed, unto the daughter and her heirs, the said lands; and there was a covenant that after due execution, &c., she should quietly enjoy, and also a clause of warranty, but there was no money paid, or other consideration, but what was expressed in the deed. It was held that though the deed could not insure a *bargain and sale,* no money having passed between the parties; yet it should operate as a *covenant to stand seized.* He cites various other cases in support of the same principle; and maintains that where the intent of the parties is to pass the estate, the method of doing it ought to be subservient to that end; and that though the intent of the grantor is to be regarded as to *what estate* is to pass, and *to whom,* yet it is not to be regarded as to the *manner* of passing it, for of that he is supposed to be ignorant. (*See Hob.* 277—*Earl of Clameckard's* case.[g])

[b]1 Co.Rep. 154, note.

[c]Will's R. 676.

[d]2 vol. 96, note 1.

[e]p. 301, b. 302, a.

[f]1 Vent. 137

[g]Sh. Touch 82,

That it was the intention of the grantor, in the case under consideration, to convey the premises to his sons and their heirs, generally or specially, to be enjoyed after his death, reserving the use of the same to himself, during his life; and, for this period, that he would remain in possession—in other words, would stand siezed for these purposes, I think is sufficiently implied by the expressions of the deed.— Then, admitting the common law doctrine, which is very clear as a general rule, that an estate of freehold cannot be created to commence *in futuro*; but that it must take effect presently, either in *possession* or *remainder;* and this for the reason that no such estate could pass without *livery of seizen*, which must operate immediately or not at all :[a] yet, if, during the interval, according to the import of the deed, the possession is to be enjoyed by the grantor, or any other, under a covenant to stand seized to the present use of himself; and subsequent use of the grantee, or for the entire use of the latter, the object of the law is satisfied. In such case, the inconsistency, against which this principle of law was intended to guard, the granting an estate to commence in future, by a conveyance importing an immediate possession, would not arise : the possesion would be consistent with the terms and object of the deed. As a further answer to this objection, our statute of uses, similar to the English statute of Henry VIII. may be cited. It provides that "in all cases by deed of bargain and sale, or by deed of lease and release, or by covenant to stand seized to use, or by deed operating by way of covenant to stand seized to use, the possession of the bargainor or releasor, or covenantor, shall be deemed hereto-

fore to have been, and hereafter to be, transferred to the bargainee, releasee, or person entitled to the use of the estate, or interest which such person hath, or shall have, in the use, as perfectly as if such bargainee," &c., " had been enfeoffed with livery of seizen of the lands intended to be conveyed by said deed, or covenant."

In this case, I think, it may, also, be assumed, that the possession of the sons immediately on the execution of the deed, was not inferior to, or materially different in principle, from that of a remainder man, while the possession of his free-hold is held by a tenant of the particular estate.

Hence, I conclude, it was competent for the grantor to convey the free-hold to his sons and their heirs, reserving to himself a life interest in the premises: and, that the terms of this deed are sufficient for the purpose.

2. Then, the second question arises, relating to the effect, under the statute, of the limitation imported by the terms of the deed.

The language of the statute is, that " every estate in lands or slaves, which now is, or shall hereafter be created an estate in fee tail, shall, from henceforth, be an estate in fee simple; and the same shall be discharged of the conditions annexed thereto, by the common law, restraining alienation before the donee shall have issue, so that the donee, or person in whom the conditional fee is vested, or shall vest, shall have the same power over the said estates, as if they were pure and absolute fees. *Provided*, that any person may make a conveyance or demise of lands, to a succession of donees, then living, and the heir or heirs of the body of the remainder

man; and, in default thereof, to the right heirs of the donor, in fee simple."

A conditional fee, at common law, was a fee restrained to some particular heirs, exclusive of others: "as, to the heirs of a man's body," by which only his lineal descendants are admitted, in exclusion of collateral heirs, &c. Under the common law merely, and before the statute *de donis*, the construction which prevailed, in relation to such conditional fees, was, that, on the birth of issue, such as contemplated by the grant, the condition was performed and discharged, and the estate was supposed to become absolute in the grantee—so far, at least, as to enable him, if he chose, to alien it, and, thereby bar, not only his own issue, but also the donor, of his inter--est in the reversion, and to forfeit or incumber it.— To prevent which, the statute of 2 Westm. called the statute *de donis*, was enacted which secured to such conveyances, additional virtue.

The English Judges so construed it as to divide the estate into two parts, leaving in the donee a new kind of particular estate, which they denominated a fee tail; and, investing, in the donor, the ultimate fee simple, expectant, on the failure of issue----which was called a reversion.

This was regarded as a residue of the fee, left in the grantor, to be enjoyed by the implied terms of the grant, at any indefinite period, when the estate created by it should expire, by the happening of the event. The statute *de donis* was admitted to have the effect to protect the interest of the heirs, and also of the grantor, until the titles become so embarrassed from the difficulty in tracing the lines of lineal descent, and the restraints on alienation, together

with the liability of the estates tail, to revert to the grantor, for any indefinite failure of lineal heirs, that methods were invented, and in most cases resorted to, of unfettering the estates, and subjecting them to alienation, even before issue born. This was .done by fines, common recoveries, and the like. The prevention of similar complexity and uncertainty, in land titles, within this State, was, doubtless, a main inducement to the passage of the act already quoted, abolishing and prohibiting estates tail.

Now to determine whether the estate created by the deed of William J. A. falls within the description, or definition given of an estate tail, let reference be had to such parts of the deed as must determine its true character in this respect. As the substance of so much thereof, (disregarding its informality, and transposing some of the sentences,) I give the following : That said William J. gave and granted unto his two sons, Henry W. and Thomas J., and the legal heirs of their bodies, forever, to be enjoyed after the death of the said William J., the lands described— to be equally divided between them : the same to be, in no wise subject to any debts, conveyances or other contracts, that they should make; as the true intent and meaning of the deed was, that said lands should remain with them and their legal heirs, forever. To have and to hold the same, in manner aforesaid.

If, instead of .the words, in the premises of the deed, following Henry W. and Thomas J., "and the legal heirs of their bodies," it had read, *and their heirs*, or *their legal heirs*, all other parts of the deed being as it is, there could have been no question but

3 v. P.                    13

that the absolute fee was conveyed to the sons: the subsequent parts would have been perfectly consistent with the premises, in respect to the grantees and the estate granted ; and, by the principles, even, of the common law, the language would have been entirely appropriate, for the conveyance of the unconditional estate. But, the insertion of the words, "heirs of their bodies," according to their common law import, would necessarily operate as a limitation of the estate, to the grantee and his lineal descendants, to be enjoyed, in succession, by each, during their natural lives, subject to reversion, if, at any time there should be a failure of such issue. The subsequent designation of said two grantees, and their legal heirs, is. not necessarily inconsistent with the former, as the words " legal heirs," are no less applicable to heirs of the body, than any others.

It is, therefore, unnecessary to examine the effect of a repugnance in this respect, between different parts of a deed. The conclusion appears to me unavoidable, that the effect of this deed, according to the common law and the statute of Westminster, would be to create an estate tail.

This proposition, however, I do not understand to be particularly contested, in argument. But, on the part of the defendant in error, it is insisted, that, though the statute was intended to convert existing estates tail into absolute fees; it could not have been intended to prevent the subsequent creation of all kinds of estates tail.

The case is supposed, of a grant to A, and the heirs of his body, and, in default thereof, to the right heirs of the grantor. This, it is said, would be as pure a fee tail, as any other that could be created ;

and, one which, by operation of the statute, would have been changed into an absolute fee.

It is denied, however, that such an estate, created since the statute, would be changed into a fee simple : for, that it would be in the identical words of the exception of the statute.

Hence, it is contended, that the proposition of the adverse counsel, that the legislature intended, that grants, made after the enactment of the statute, in the same language of those which, by its terms, were converted into pure fees, should also convey fees simple to the grantees, can not be true.

To this argument, which, at least has the merit of plausibility, the counsel for the plaintiff in error urges a satisfactory reply : it is, that his proposition, alluded to, means, that every grant, that existed at the passage of the act, and contained words proper and necessary to create a fee tail, was changed, by the act, into a fee simple : and, that every grant made since, if it contained the same proper and necessary words to create a fee tail, is a conveyance of the fee simple.—That, before the act, a limitation of the reversion expressed, was useless and inoperative; because it was secured by operation of law, as well without, as with an express limitation.

Remarkable as it may appear, no case, fully involving the construction of this statute, has previously occurred in this court, or of a similar one, elsewhere, within our observation. As a new question, then, and one, which, from its nature must affect a large amount of real estate, on conveyances already existing, as well as others, to be executed, it is worthy of the most deliberate consideration.

To concede to the statute, according to the argu-

ment referred to, a construction which would abolish estates tail, created before its passage, and, at the same time, recognise the right of the same grantor, or another, by the use of the same words, (they being appropriate and usual,) to create a new estate, of the same character, which would be valid, would involve an incongruity, which it is, by no means, probable, the legislature intended.

It is true, that, in England, a conveyance, such as is expressly authorised, by the proviso to the statute, would be regarded as a fee tail, and could constitute nothing else ; but, it is equally clear, that a portion of the language thus to be used, would, there, be unusual and unnecessary : consequently, we are at liberty to suppose, that the legislature only intended to inhibit estates tail, created in the usual form, by providing, that the words, " heirs of the body," should not, here, receive their technical common law operation, to limit a conveyance, so expressed, to lineal descendants, and imply a reversion to the grantor, on the failure of such heirs. We are bound to do so, if it be found impossible, otherwise, to reconcile the general provision of the statute, with the exception, which, in this instance, appears to be the case.

Reference to another general provision, contained in the previous section of the same statute, will aid in the construction of this. It is that which declares, that " every estate in lands, which shall be hereafter granted, conveyed or devised; although words, heretofore necessary to transfer an estate of inheritance, be not added, shall be deemed a fee simple, if a less estate be not limited, by express words. This was no less an innovation upon the common law, than that

relating to estates tail :. by force of this, a convey-ance, which, by the common law, would have creat-ed only a life estate, for want of the word " heirs," is made to secure a fee simple.

A principle, which it appears to have been the object of both these sections of the statute to advance, was, that there should be no implied reversion of the fee ; and, of that relating to entails, that the words, " heirs of the body," should also be depriv-ed of the virtue of limiting the grant to the grantee, and his lineal descendants, for the period only of their respective lives, unless an intention of the kind, instead of being left to implication, was declared by express words, such as prescribed by the statute, that " in default thereof, (of such heirs,) then to the right heirs of the donor."

The position assumed, in argument, that, by vir-tue of the statute, a conveyance to one " and the heirs of his body," without any other limitation ex-pressed, operates as an estate in fee, no less than if the word " heirs," generally, were used, appears to be tenable, and the only view that can give effect, both to the body and proviso of the statute.

Before the statute, the words "heirs of the body," were the proper operative words, for the creation of an estate tail—the word " heirs," merely, for an es-tate in fee simple.

Then, in as much as the statute has declared, that every estate, which then had been, or thereafter might be created an estate in fee tail, should operate as an estate in fee simple, &c., the same effect, pre-cisely, is given to either form of expression ; and, either must operate as a fee simple, if there be no other provision in the deed, to vary the import, such

as the last limitation prescribed by the statute, that, in default of heirs of the body, the estate should then revert to the right heirs of the donor, in fee simple.　This limitation, also, appears indispensable, to reserve even a contingent fee in the grantor, according to the previous section cited, which gives to all conveyances the effect of fees simple, if less estates be not limited by express words.

It has never been considered, that the words "heirs of the body," even in England, reserved the right of reversion to the grantor, "by express words," but only by implication : this, it appears to have been the object of both these sections to prevent.

If the principle be conceded, as I think it must be, that under the statute, "heirs of the body," and "heirs," generally, without any other limitation expressed, import the same thing, the difficulty, on this point, must immediately vanish.　The effect of this conveyance must be the same as if the words, "heirs of their bodies," in connection with "heirs," had not been inserted.

As respects the argument, that these words should constitute the heirs of the first takers, tenants in fee, after the death of their fathers, I can find no warrant for such construction.　The common law import of the words "heirs of the body," limited the estate to the lifetime of the heirs, as absolutely as did a grant to A, and the heirs of his body, limit his estate to the period of his life.　On the same principle that these words could, or ever did deny to the tenant in tail, the absolute fee, they reserved the right of reversion.

By force of the statute, their effect has been alike varied, in both these respects.　Had the legislature

intended to convert estates tail, such as are imported by this conveyance, into absolute fees, in the children of the first takers, we may safely presume, that other, and more appropriate words would have been used, for this purpose. Both in England and in the United States, the words, "heirs of the body," have, in their technical acceptation, been understood to imply the reverse.

A principle of decision ever to be held sacred, is, "that where words have long been used, in a technical sense, and have received an uniform construction, they have become a rule of property, and the construction should be adhered to; otherwise, titles to estates may be unsettled." Then, according to this principle, the words "heirs of their bodies," as expressed in this deed, construed, without reference to the statute, would have had the effect to constitute Henry W. and Thomas J. Augustin, tenants in tail, thereby limiting the remainder as life estates, to their lineal descendants, through succeeding generations, until the line should become extinct, then to revert to the grantor. Apart from the statute, the terms, "failure of issue," or "dying without issue," mean an indefinite failure of issue: and, unless accompanied by some additional clause, word or circumstance, clearly denoting a contrary intention, they must receive this construction.—*Patterson* vs. *Ellis.*[a]    [a] 11 Wend. 259

In this case nothing is expressed or implied to the contrary, except under the influnce of the statute. This statute declares such shall constitute *absolute fees;* with the exception that lands may be conveyed "to a succession of donees, then living, and the heir, or heirs, of the body of the remainder

man, and in default thereof to the right heirs of the donor, in fee simple."

Hence I conclude, as before intimated, that to constitute a valid limitation, by deed, as here contended for, the language prescribed in the statute, particularly the latter clause, "and in default thereof, to the right heirs of the donor in fee simple," must be adopted; and that for the want of such, in this deed, it must, according to the direction of the statute, operate as a pure and absolute fee, in the *donees;* that, consequently, the title of Martha A., the issue of one of them, cannot be sustained.

I am, therefore, of opinion that the judgment of the Circuit Court must be reversed; in this the Court are unanimous. Let the cause be remanded for a new trial