Judge Green
delivered his opinion, in which the other Judges concurred.*
Richard Wright, by his will dated in 1740, devised to his son Francis, a tract of land in Lower Machodick, which had been given to the testator by his brother John Wright, and also, after the death of his wife, the tract of land on which the testator lived, to him arid his heirs forever. Francis Wright was then,- as appears by the will, under the age of eighteen. Francis made his will in December, 1775, and died before the 26th of March, 1776. By this will, he directed that the land he had purchased of John Rust, should be sold for the payment of his debts, and the *494 surplus proceeds of the sale equally divided between his three sons,Benedict Wright, Johnson Wigginton Wright, and Wright Wright. (The testator had no son named Wright Wright, and no attempt is made to shew which of the sons was intended by this name.) He also gave to his wife the dwelling-house and one-third of the land adjoining it, for life; and also, one-third of his personal estate, for life; and after her death, to be equally divided amongst all his children; and directed that all the rest of his estate should be equally divided amongst all his children. On the 26th of March, 1776, the will was proved by three witnesses. The executors qualified; and John Rochester, who was chosen guardian of Presley Wright, the heir at law of Francis Wright, was directed to be summoned to contest the recording of the will. No step was taken on this order, so far as appears. But, on the 26th of March, 1793, the Court in which the will was recorded, made an order in these words: “ On the motion of Francis Wright, it is ordered that this will be recorded, the heir at law consenting thereto.” On the 13th of November, 1753, Gerard Davis and Thomas M’Farlane and Elizabeth his wife, conveyed Í23 acres of land to Francis Wright, which does not appear to have lain adjoining any other land held by Francis Wright. Francis Wright left five children living at the time of his death, Presley, (the eldest son, and heir at law,) Benedict, William, Nancy, and Johnson W. Wright. Such of those children as were alive, and the representatives of one who was dead, filed their bill on the 12th of July, 1820, against the heirs of Presley Wright, who died in 1810, intestate; and afterwards against the purchasers claiming under some of the heirs of Presley Wright, claiming a partition of a tract of land described as containing acres, of which Francis Wright died seised and possessed, and which he was entitled to under the will of Richard Wright. They charge that soon after the death of Francis Wright, Presley Wright entered upon the whole of the said tract of *495 land, and received the rents and profits thereof during his life, and that his heirs, and those claiming under them, received the rents and profits since his death.
The answer of some of the defendants seems to consider the claim of- the plaintiffs as applying to the tract of land of 123 acres, before mentioned, .purchased by Francis Wright from Gerard Davis and others. These defendants rely upon the uninterrupted possession of the land mentioned in the bill, by Presley Wright, and those claiming under him, from the death of Francis Wright, until the exhibition of the bill, (a period of forty-five years,) without any claim set up, or made known, to the persons in possession, by the complainants, or those under whom some of them claim. They contest the sufficiency of the proof of the will, and state that the clerk’s office of Westmoreland county, (in which the land lies,) was burnt,.with many of its records; but at what time it was burned, they state that they know not. All the defendants who answered, contested the right of the plaintiff to any part of the land. The delay on the part of the plaintiffs to assert their title, is not attempted to be accounted for. The depositions of the witnesses are unimportant, and are not evidence against one of the parties, a purchaser of a moiety of the land, who was not made a party to the cause until after all the depositions were taken.
The Court of Chancery decreed partition according to the prayer of the bill; describing the land so to be divided as the tract of land mentioned in the bill.
The difficulties which present themselves, in the prosecution of writs of partition at law, have induced the Courts of Equity, upon one of their general principles, to assume a jurisdiction to decree partition; and it is now considered that an application to a Court of Equity for that purpose, is not addressed to the discretion of the Court, but is a matter of right if the title of the plaintiff is admitted or clear. But, if that be denied, and it depends on doubtful facts, or on doubtful questions of law, a Court of Equity *496 will either dismiss the bill as unfit for its jurisdiction, or, retaining the bill, refuse relief until the plaintiff shall have established his right at law. If the Court of Equity should undertake to decide upon the validity of the plaintiff’s title in either of these cases, they would, in the one case, invade the province of a jury, and in the other, of a Court of Law; and in either case, violate the rule that equity cannot take jurisdiction of questions involving the legal title to lands; especially when the title can be asserted without any impediment in a Court of Law. Agar v. Fairfax, 17 Ves. 552. Calmady v. Calmady, 2 Ves. jr. 570. Baring v. Nash, 1 Ves. & Beam. 556. Cartwright v. Pulteney, 2 Atk. 380. Wilkin v. Wilkin, 1 Johns. Ch. Cas. Phips v. Green, 3 Johns. Ch. Cas. 300. Wiseley v. Findlay, 3 Rand. 361.
In this case, the validity of the probat of the will, under which the plaintiffs claim, is contested. There is no proof of the execution of the will, so as to pass real property, but the order of Court in 1793, ordering the will to be recorded, upon the motion of Francis Wright, (who does not appear, from any thing in the record, to have had any interest in the will;) and with the consent of the heir, who is not named in the order; and the order of Court in 1776, stating that the will was proved by three witnesses, and directing the heir at law, by name, to be summoned to contest the will by his guardian; an order upon which no'further proceedings appear to have been had. Whether these orders were sufficient proofs of the due execution of the will to pass real estate, was a question emphatically proper for a Court of Law.
The defendants also rely upon an adversary possession of upwards of forty-five years. Whether this possession was adversary or not, was proper for the decision of a jury in an action at law; and if adversary, whether the right of the plaintiffs was or was not barred by the statute of limi - tations, presented many questions purely legal, and involved other questions of fact, particularly as to the ages of the children of the testator, which do not appear in the i’ecord.
*497 The defendants rely upon the presumptions arising from die great lapse of time, connected with the other circumstances of the case, as a bar to the plaintiffs’ demand, independent of the statute of limitations; either that Presley Wright, under whom they claim, had some title paramount the will of his father, or that satisfaction had been made to the plaintiffs in the assignment of other portions of the estate of the testator to them, or otherwise. These also were questions proper to be discussed and settled only in a Court of Law. The Court of Chancery should not have undertaken to settle the question of title, depending upon such and so many questions of law and fact; but should have left the plaintiffs to assert their title at law.
The decree must therefore be reversed; and the only question which remains, is, whether the bill should be dismissed or retained for a reasonable time, to enable the plaintiffs to establish their title at law if they can, and to allow them, in that event, to resort again to the Court of Chancery, for a decree for partition in this suit ? The defendants insist that the bill should be dismissed, because as they allege, a Court of Equity will not assist a party after an adverse possession of twenty years, which would be sufficient to bar an ejectment at law. This is certainly now the settled rule, when the plaintiff asserts a purely equitable title, upon which, if it were a legal title, the right of entry at law would be barred. This is established by the cases of Cholmondely v. Clinton, 2 Jac. & Walk. 138; and Elmendorf v. Taylor, 10 Wheat. 152, cited in the argument of this case. Whether a Court of Equity would refuse to assist a party to assert a legal title, when the right of entry was barred by twenty years adversary possession, by removing impediments to a fair trial at law, it is unnecessary to determine. In this case, the plaintiffs claim partition under a legal title. They ask no assistance of the Court to enable them to assert that title; nor can we say confidently on the matter in this record, that their right of entry was barred by an adverse possession of twenty years, under *498 such circumstances as would constitute a bar to an action ejec(-ment a(; ]aW) or that they would be barred of their writ of right. If the Court of Equity refused to entertain the bill for partition, they might still sue for their undivided portion of the property by ejectment or writ of right; and if they recovered and were put into possession, according to the judgment, the Court of Equity could hot' then refuse a decree for partition,-whether the recovery was in ejectment or in a writ of right.
I think, therefore, that the bill should be retained a reasonable time, to be fixed by the Court of Chancery, that the plaintiffs may prosecute such action at law as they may be advised to institute, for the establishment of their title, with liberty to the plaintiffs, if they should succeed at law, to resort to the Court of Chancery fora decree for partition in this suit.

 Judge Coaiteh absent.