Deloney et al. *vs.* Walker et al.

DELONEY et al. *vs.* WALKER et al.

1. The lands of a person who dies intestate without children, or brothers or sisters, or the descendants of such, or father or mother, shall descend to his paternal and maternal uncles and aunts, equally.

2. The lands of an adult cannot be sold by a decree of the chancellor, to make partition, without his consent—the proper mode of proceeding is, after partition made, to direct each party to convey to the other.

Error to Limestone Circuit court, exercising chancery jurisdiction.

Bill for partition, tried before *Lane, J.*

The decree below ordered a sale and division, and the error here assigned was, that the bill was not dismissed.

*Robinson,* for plaintiffs in error.

*McClung,* contra.

ORMOND, J.—This was a bill filed in chancery, for a partition of lands.

The principal question to be determined in this case, is whether, where a person dies without children, or brothers or sisters, or the descendants of such, or father or mother, his lands shall descend to his paternal and maternal uncles and aunts equally,—or whether it shall descend in the line of the blood of the first purchaser, who, it is alleged in the answer, was the father of the deceased.

As the answer contains a demurrer to the bill, it is

necessary first to determine, whether equity has jurisdiction. The jurisdiction of courts of chancery, to entertain a bill for partition of lands, appears to be founded on the ability of a court of chancery to do complete justice in those cases, where, from the complication of the title, or from the fact of its being of an equitable nature, a court of law could not afford an adequate remedy, or would be precluded, by the nature of the title, from making partition.

Whatever may have been the origin of the jurisdiction, it is now very clear, that an application to a court of chancery for that purpose, is not addressed to the discretion of the court, but is a matter of right, if the title of the plaintiff is admitted or clear. "But if the title be denied, or it depends on doubtful questions of law, or complicated facts, the court will not dismiss the bill, but will retain it until the party shall have established his right at law"—(See the case of Straughan and others vs. Wright and others, 4 Rand. Rep. 493, where the case is very lucidly stated; and also 1 Story's Equity, 599; Mitford on Pleading, 170; Wisely vs. *Findlay* and others, 3 Rand. Rep. 361; Barry vs. Nash, 1 Vesey & Beam, 552; Agar vs. Fairfax, 17 Vesey, jr. 551.)

The question of title in this case, is one of undoubted law, arising on the construction of our statute of descents, and it would subserve no other purpose than to promote litigation and expense, to require the complainants to establish their title at law.

It is further insisted, that as there is no allegation in the bill, that the deceased had neither brother nor sister, or descendants of such, that the complainants have not

Deloney et al. *vs.* Walker et al.

shewn a title in themselves. It is certainly true, that it was the duty of the complainants to state their title with precision, and this appears to have been sufficiently done in this case. The complainants claim to be, with the wife of the defendant, Deloney, the heirs at law of the deceased; which title is asserted to be in them, as the uncle and aunts of the deceased. It was not necessary to allege the non-existence of those relations, who are, by the statute of descents, preferred to the uncle or aunt, as the assertion, that standing in that degree of relationship to the deceased, they are his heirs at law, is equivalent to the allegation, that no one preferred to them by the statute, is in existence.

The material question in this case, is, whether it was the intention of the framers of our statute of descents, that, on failure of lineal descendants, the estate should only descend to those collateral relations, who are of the blood of the first purchaser, which is the fifth canon of descents, as laid down by Blackstone in his Commentaries.

The affirmative of this proposition, is maintained by the counsel for the plaintiffs in error. The first purchaser of the lands in controversy, having been the father of the intestate,—and the wife of the defendant, Deloney, being his paternal aunt,—it is insisted, that she will take the whole estate, to the exclusion of the complainants, who are the maternal uncle and aunt of the deceased. The statute is in these words:

" Where any person shall die seized of any estate or inheritance in lands, tenements or hereditaments, not devised, the same shall descend to his or her children, and

their descendants, in equal parts, the descendants of the deceased child or grand-child to take the share of their deceased parents, in equal parts among them; and where there shall be no children of the intestate, nor descendants of such children, then to the brothers and sisters of the intestate, and their descendants, in equal parts; the descendants of a brother or sister of the intestate, to have in equal parts among them, their deceased parent's share; and where there shall be no children, or descendants of them, or any of them, and no brothers or sisters, or descendants of them, or any of them, then to the father, if he be living, if not, to the mother of the intestate; and if there be no children of the intestate, or descendants of such children, and no brothers or sisters, or descendants of them, nor father or mother, then such estate shall descend in equal parts to the next of kin to the intestate, in equal degree, computing by the rules of the civil law; and there shall be no representation among collaterals, except with the descendants of the brothers and sisters of the intestate; and there shall, in no case, be a distinction between the kindred of the whole and half-blood, except the kindred of the whole blood, in equal degree, shall be preferred to the kindred of the half-blood in the same degree, saving to the widow of the intestate, in all cases, her dower; and where there shall be no children of such intestate, nor descendants of them, then the widow shall have as her dower, one half of such before-mentioned estate of her deceased husband"
—(Aik. Dig. 128.)

It is impossible, we think, to doubt that it was the intention of the Legislature to abrogate the entire common

Deloney et al. *vs.* Walker et al.

law rules of descent, and to introduce new rules in their stead, more consonant to our institutions. Not only is the law of primogeniture abolished, and females placed on the same footing with males, but also all considera-tion of the necessity of tracing a descent from the blood of the first purchaser, is excluded by necessary implica-tion. That requisition was supported by considerations derived from the Feudal System, and fell with it.— This is demonstrable from the law itself. For example: by the statute, the mother may inherit from the child, an estate of which the father was the first purchaser; at her death, the inheritance would descend upon a new line of heirs, who might not, and generally would not, have any of the blood of the first purchaser. A still more conclusive argument is found in the fact, that by the same act, the personal property of an intestate is to de-scend to, and be distributed in the same manner as real property is to descend. It would be monstrous, to sup-pose that the Legislature could have intended to apply the rule contended for, to personal property, yet that would be the legitimate consequence of adopting the construction contended for by the plaintiffs' counsel. We are, therefore, of opinion, that the estate of John Fox, de-ceased, before his dying intestate, descended upon, and must be divided equally among his uncle and aunts, both on the father's and mother's side.

But there is error in the interlocutory decree of the chancellor, directing the lands to be sold. We cannot suppose a case, in which the lands of an adult can be sold by a decree of the chancellor, to make partition, without his consent; no such consent appears in the re-

Deloney et al. *vs.* Walker et al.

cord. One of the grounds on which the equitable juris-
diction is maintained is, that a court of chancery may,
where lands cannot be equally divided, restore the equi-
librium, by directing compensation to be made—(Earl of
Clarenden vs. Hornley, 1 P. Williams, 447.) Cases may
exist, in which, where infants are concerned, the chan-
cellor may have power to decree a sale, to make more
equal distribution; but that is not this case.

The proper mode of proceeding is, after partition
made, to direct each party to convey to the other—(1
Story on Equity, 606, and cases there cited.) The decree
must, therefore, be reversed, and the cause remanded for
further proceedings. As this point was not made in the
argument, and as it is probable the case was brought
here merely to ascertain whether the complainants had
title, each party will pay his own costs in this court.