# HORTON *vs.* SLEDGE.

[BILL IN EQUITY FOR PARTITION OF LANDS BETWEEN TENANTS IN COMMON AND ACCOUNT OF RENTS AND PROFITS.]

1. *When trial at law is necessary.*—In a suit for partition of land, where the complainant's title presents a pure question of law as to the construction of an uncontroverted deed, the denial of his title in the answer is not a sufficient reason for requiring the title to be established at law ; but where the answer denies a material fact, on which the complainant's title depends, the defendant is entitled to a jury trial.

2. *Practice in ordering issue at law.*—When a trial at law is necessary before a decree for partition can be rendered, the proper practice is, not to dismiss the bill, but to stay proceedings until a trial at law can be had ; and in ordering a trial at law, the defendant may be required to admit an actual ouster.

3. *Multifariousness.*—A bill for partition and account of rents and profits, which unites as a defendant with the tenant in common, who has had possession of only a portion of the land, a trustee who held possession of the entire tract until the delivery of a portion to his co-defendant, is not multifarious, since the accounts against the two are so connected that one cannot be taken without the other.

4. *Remainders and conditional limitations.*—At common law, a remainder could not be limited upon a contingency which would abridge or defeat the particular estate, and a fee could not be mounted on a fee ; but under the statute of uses, a conditional limitation may be created by deed, and a fee may be limited on a fee determinable on condition.

5. *English statute of uses, how far in force in this State.*—The English statute of uses, 27th Henry VIII, which was enacted before the emigration of our ancestors to this country, not being inconsistent with our institutions and government, constitutes a part of the common law of Alabama, except so far as repealed or modified by the act of 1812.

6. *Construction and consideration of conveyances under statute of uses.*—A deed, which purports to have been made in consideration of the grantor's natural love and affection for the grantees, who are his great grand-children, and of $5 in hand paid ; and which uses the words, " give, grant, bargain, sell, alien, enfeoff, and convey,"—will be held a conveyance under the statute of uses, if it cannot otherwise be upheld ; if, on account of its consideration, it cannot operate as a deed of bargain and sale, it will be deemed some other one of the conveyances under the statute ; and it may be maintained as a covenant to stand seized.

7. *Deed construed, and limitation held valid.*—A deed, conveying a tract of land to George and Thomas, to be equally divided between them, contained these words ; " It is moreover expressly understood, and this conveyance is upon this condition, that if the said Thomas should die before attaining the age of 21 years, leaving no brother or sister, then the whole of said

tract of land shall belong exclusively to said George; but if the said Thomas should die before attaining the age of 21 years, leaving brothers and sisters, then the half of said tract of land hereby conveyed to him shall go to his said brothers and sisters." Thomas having died before attaining the age of 21 years, leaving an only sister and no brothers,—*held*, that the sister took one half of the land.

8. *Misjoinder of defendants.*—When parties who have no interest whatever in the suit are improperly joined as defendants, the other defendants cannot take advantage of the misjoinder.

9. *Compensation for improvements.*—In a suit for partition of lands between two tenants in common, and an account of rents and profits, a trustee can only have compensation for valuable and permanent improvements made by him, under a *bona-fide* claim of title, before he was apprised that his title was disputed; nor can the compensation, in any event, exceed the rents and profits charged against him.

10. *Election and subrogation.*—A trustee, who held possession of a tract of land of which one half belonged to an infant, purchased her interest of her father, who afterwards conveyed a negro to her in payment of the purchase money; but the contract of sale was subsequently rescinded, and the trustee received from the father, in lieu of the repayment of the purchase money, a stock of goods, and an indemnity against liability for rents. The infant having filed a bill against her tenant in common and the trustee, for a partition of the land and an account of the rents and profits, the trustee filed a cross-bill, alleging, in addition to these facts, the insolvency of the father; and asking that the complainant might be compelled to elect whether she would hold the negro, or proceed for the rents, and that he might be subrogated to her rights in the negro if she elected to proceed for the rents. *Held*, that he was not entitled to the relief sought.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. A. J. WALKER.

THE original bill in this case was filed by Apples Sledge, an infant suing by her next friend, against George Horton, George H. Horton, Washington Sledge, and Sally Sledge; seeking a partition of a tract of land between complainant and said George H. Horton, and an account of rents and profits received by said George H. Horton and George Horton. The deed under which the complainant derived title to the land, was executed in this State, on the 2d February, 1835, by one William Lanier, who was the great grand-father both of said Apples Sledge and said George H. Horton; the material portion of which is as follows:

" This indenture, made this 2d day of February, 1835, between William Lanier, of the county of Madison and State of Alabama, of the one part, and George H. Horton, infant

son of George Horton and Mary his wife, of the county and
State aforesaid, and Thomas A. Sledge, infant son of Joel M.
Sledge and his wife Ann, of the county of Fayette in the
State of Tennessee, of the other part,—witnesseth, that the
said William Lanier, for and in consideration of the natural
love and affection which he has and bears towards the said
infant children, who are his great grand-children, as well as
for the further consideration of the sum of $5 to him in hand
paid, the receipt whereof is hereby acknowledged, has this
day given, granted, bargained, sold, aliened, enfeoffed and
conveyed, and by these presents does give, grant, bargain,
sell, alien, enfeoff and convey, to the said George H. Horton
and Thomas A. Sledge, infant children as aforesaid, all that
certain tract or parcel of land," &c. ; " to be equally divided
between them. And it is moreover expressly understood,
and this conveyance [is] upon this condition, that if the said
Thomas A. Sledge should die before attaining the age of
twenty-one years, leaving no brother or sister, then that the
whole of said tract or parcel of land hereby conveyed shall
belong exclusively to the said George H. Horton ; but if the
said Thomas A. Sledge should die before attaining the age
of twenty-one years, leaving brothers and sisters, children
of his said mother, then the half of said tract or parcel of
land hereby conveyed to him shall go to his said brothers and
sisters ; and if the said George H. Horton should die before
attaining the age of twenty-one years, then that his share of
said land shall go to his surviving brothers and sisters, chil-
dren of his said mother. And it is further expressly under-
stood, that the share of said tract or parcel of land hereby
conveyed to said Thomas A. Sledge shall not be, nor shall
any part thereof, at any time under the control of said Joel
M. Sledge, the father of the said Thomas A. Sledge ; but that
the whole of said tract or parcel of land shall be under the
care and control of the said George Horton, the father of
the said George H. Horton, who is hereby entrusted with the
husbandry and managing of the same, and taking care of the
proceeds thereof, until the said Thomas A. Sledge becomes
twenty-one years of age ; and should the said Thomas A.
Sledge die prior to that event, then the avails, proceeds, &c.,
of said land, shall go with the land ; it being the intention

of the said William Lanier to convey and dispose of the said tract or parcel of land according to the wish and desire of the late Mrs. Elizabeth Frazier, the daughter of the said William Lanier and grand-mother of said Thomas A. Sledge and George H. Horton, as expressed in her last will and testament," &c. " To have and to hold the aforesaid tract or parcel of land, with the tenements and appurtenances thereunto belonging or in any wise appertaining, with the limitations and conditions aforesaid, unto the said Thomas A. Sledge and George H. Horton, their heirs and assigns forever," &c.

The bill alleged, that said Thomas A. Sledge died in 1835, before attaining the age of twenty-one years, and leaving no surviving brother or sister except complainant; that his mother afterwards gave birth to said Washington and Sally Sledge, who claim an interest in his moiety of said land ; that George Horton took possession of the land under and by virtue of said deed, and cleared and cultivated it, until the death of said Thomas, for the joint benefit of said Thomas and said George H. Horton ; that said Horton, after the death of said Thomas, recognized complainant's title to a moiety of the land, and so held and cultivated it until 1842, when he made a pretended purchase of her interest from her father, said Joel M. Sledge, and since that time has claimed it as his own ; that said George H. Horton attained his majority in 1852, and his father then delivered to him a portion of the land, which said George H. has since that time culti- vated for himself.

The defendants, George Horton and George H. Horton, answered separately, but their answers are substantially the same. They admit the execution of the deed by William Lanier, and George Horton's possession of the land under it; but deny that complainant was born before the death of Thomas A. Sledge, or that she takes anything under the deed. They demur to the bill, 1st, for want of equity ; 2dly, for multifariousness; and, 3dly, on account of the misjoinder of Washington and Sally Sledge. George Horton further answers, that, during the life of said Thomas A. Sledge, he purchased from his father, at the price of $1200, the interest of said Thomas in said lands, and supposed that his purchase

gave him a title to a half interest in the lands, and under this supposition has erected permanent and valuable improvements on the lands ; that said Joel M. Sledge afterwards conveyed a negro by deed to complainant, in payment and satisfaction of the money received by him on this sale, but stipulated in the deed that he should retain the negro until complainant reached the age of eighteen years ; that subsequent to this, discovering that said Joel M. Sledge had no right to sell any interest in said lands, respondent insisted on rescinding said contract, and finally succeeded in obtaining from said Sledge, in lieu of the purchase money, some property and an indemnity against liability for the rent of the land ; that said Sledge has become insolvent, and complainant still has possession of the negro conveyed by him to her ; and that respondent now holds possession of said lands for the parties who may be interested therein.

A cross-bill was also filed by George Horton, alleging these facts, and asking that complainant might be required to elect, whether she would retain the negro, or proceed for the rents and profits of the lands ; and, in the event she should elect to take the rents and profits, that he might be substituted to her rights in the negro.

On the final hearing, on bill, cross-bill, answers, and proof, the chancellor held, that the limitation over to the brothers and sisters of Thomas A. Sledge was void, but that complainant took an undivided moiety of the land as heir of said Thomas ; that George Horton was not entitled to any compensation for improvements made on the lands, but was entitled to be subrogated to complainant's rights in the negro conveyed to her by her father ; that the bill contained equity, and was not multifarious ; and that the misjoinder of Washington and Sally Sledge was an objection of which the other defendants could not take advantage.

The decree in the original cause is now assigned as error by George Horton and George H. Horton, and the decree on the cross-bill by the original complainant.

ROBINSON & JONES, for the appellants.—1. Thomas A. Sledge took a fee in the land.—Clay's Digest, 156, § 33. But it was a base and determinable fee ; subject to be, as it was

in fact, defeated by his death before he reached the age of twenty-one. Upon his death, complainant could not take as remainder-man, because a fee cannot be mounted on a fee by deed.—Fearne on Remainders, top pp. 11, 12, 371, notes; 1 Co. Lit. 394–5, (504–6). She could not take as heir of Thomas, because this would convert the limitation into a condition. If it be held a condition, it belongs to that class which, *ipso facto*, and without entry, determine the estate to which they are attached.—2 Co. Lit. 201 *a*. The intention of the grantor, which must prevail, was, that the estate of Thomas should cease if he died under twenty-one, and that the land should then go to another ; but as a purchaser, and not as heir to Thomas. This limitation over, though inoperative to carry the land, is still so far operative as to show the grantor's intention ; which, if not contrary to law, the court will consider and effectuate.

But it is a limitation, and not a condition. It is an essential part of every condition, that a right of entry for its breach should abide in the grantor.—4 Kent's Com. 127. This deed reserves no such right, either expressly or by implication ; but, on the contrary, it is expressly renounced. If land be given to A until B returns from Rome, and after his return to C in fee, C would take on B's return.—Fearne on Remainders, 13. This would be a limitation, because the grantor divested himself of his right of entry, and gave it to another ; but this right could not be reserved for a stranger, and therefore the happening of the event destroys A's estate, and the land vests in C, without any act to be done by any one. Again, when an estate is so confined and limited by the words of its creation, that it can continue no longer than the happening of a certain event, this is a limitation, and not a condition ; and when the event happens, the estate is thereby destroyed.—1 Bla. Com. 155–6. Again, words which, standing alone, would make a condition, shall, when coupled with words of limitation, make a limitation, and not a condition. 1 Bla. Com. 156 ; 4 Kent's Com. 126–8, note *a*. If complainant can take as heir, any other person sustaining that relation could also take ; and if Thomas had left no brother or sister living at his death, his father would have taken ; thus violating the clearly expressed intention of the grantor.

If the land escheated, as the chancellor seemed to think, complainant could not take it as heir, because the title vested in the State the instant Thomas died.—Clay's Digest, 189, § 1 ; 4 Kent's Com. 424 ; 18 Ala. 574. But the question of escheat does not arise in the case ; for that question can only arise, when the owner dies, leaving no inheritable blood, or when his heirs are aliens.—4 Kent, 424. The deed vested in Thomas a fee of uncertain duration. The event, upon which it was to determine, might possibly happen ; and this uncertainty left in the grantor a *quasi* reversion, a possibility of interest, which he could not limit over. This possibility of interest was changed into a certainty by the death of Thomas, and that change created a perfect reversion.—4 Kent, lecture 54, pp. 9–11, note *a*.

It is clear, therefore, that the grantor intended the land should not have a descendible quality, unless Thomas attained his majority.; that if he died under that age, no one should succeed as his heir to the estate. The succession being broken, the land cannot go to complainant as heir, nor does the State take it by escheat ; but it goes back to the grantor, by his *quasi* reversion.

All the allegations of the bill show that the complainant claims as remainder-man, by virtue of the limitation in the deed ; and she cannot be allowed to recover by proving that she is heir-at law of Thomas.—McKinley v. Irvine, 13 Ala. 693 ; Crabb v. Thomas, 25 Ala. 216.

2. The bill is multifarious, because it blends the claim against George Horton for rent for the whole time, with that against George H. Horton for a part.—McIntosh v. Alexander, 16 Ala. 87.

3. If George Horton is liable for rents, he is entitled to compensation for improvements and repairs.—Jones v. Ward, 10 Yerger, 169 ; McKinley v. Holliday, 10 Yerger, 477–80. If he had rented the land to others, he would have been compelled to make the compensation to such tenants ; and the fact that he cultivated the land himself, cannot change the principle.

4. The answers of both defendants deny the complainant's title, and George H. Horton sets up title in himself. Under this state of facts, it was error to decree partition. Questions

of title cannot be tried in a bill for partition.—Wilkin v. Wilkin, 1 Johns. Ch. 117 ; Phelps v. Greene, 3 *ib.* 302 ; Coxe v. Smith, 4 *ib.* 275 ; Bruton v. Rutland, 3 Humph. 435 ; Nicely v. Boyles, 4 *ib.* 177 ; 4 Hayw. 295. When the estate is legal, and the question of construction a legal one, a bill for partition will not lie.—Maxwell v. Maxwell, 8 Iredell's Eq. R. 25. When the possession is adverse, such a bill will not lie.—Hosford v. Mervin, 5 Barbour, 51 ; Burhans v. Burhans, 2 Barbour s Ch. 398. The bill ought to have been dismissed, or, at least, the proceedings ought to have been stayed until the right was established at law. The better practice is to dismiss the bill, since a right must be perfect at the filing of the bill, and cannot be aided by subsequent events. Brinkerhoof v. Brown, 4 Johns. Ch. 671.

5. The decree on the cross-bill is correct. As the complainant elected to take the land and rents instead of the negro given by her father in lieu of the money received for the lands, she cannot hold the negro ; and it would therefore be unjust to let the slave go into the hands of her father, who is shown to be insolvent, and compel the defendants to sue him on his undertaking. Chancery will substitute them to all her rights, and prevent the slave from going into the hands of her father.—1 Story's Equity, 588, § 633 ; 2 H. & J. 455.

ROBERT C. BRICKELL, *contra.*—1. In determining the construction of the deed, it is material to bear in mind, that it must be considered that species of conveyance by which, consistently with the rules of law, the grantor's intention may be effected.—6 Mass. 24 ; 15 Pick. 23 ; 3 Porter, 91 ; 2 Hill, 659 ; 2 Smith's Leading Cases, 388. The deed contains the elements of a bargain and sale, and of a covenant to stand seized ; to-wit, a pecuniary consideration, and the consideration of natural love and affection. The pecuniary consideration will support a bargain and sale, while the consideration of blood, appearing on the face of the deed, will support a covenant to stand seized.—2 Lomax's Digest, 191, 195. The operative words of the deed, " give, grant, bargain, sell," &c., will create a covenant to stand seized.— 2 Lomax, 193-4 ; 2 Greenleaf's Cruise, book 4, p. 149 ; 2 Hilliard on Real Property, 313. A bargain and sale, and

a covenant to stand seized, both before and since the statute of uses, have been regarded as mere declarations of uses.— 1 Sanders on Uses and Trusts, 152–7. The deed of bargain and sale, and a covenant to stand seized to uses, are conveyances originating under the statute of uses, and belong to that class of conveyances which only transfer the use, and which operate without any transmutation of possession. They are said to operate without any transmutation of possession, because the legal seizin and possession are effected, not by the conveyance itself, nor by any formality or ceremony attending it, but by operation of the statute. Before the statute, they only raised a use, which a court of equity would charge on the land ; since the statute, they raise a use, which the statute executes by annexing the possession. 2 Hilliard on Real Property, 308 ; 2 Greenl. Cruise, 136, 149 ; 3 Pick. 528 ; 14 Mass. 492 ; 1 Johns. Cases, 94. The uses are served, in the two conveyances, out of the seizin of the bargainor and covenantor, as they severally arise.— 2 Greenl. Cruise, 156 ; 2 Hilliard, 318. Springing uses, which are limited to arise *in futuro*, without any preceding estate to support them, arise out of the seizin of the bargainor or covenantor when created by these conveyances ; and so of shifting, or secondary uses, which are so limited as to change by matter *ex post facto.*—2 Greenl. Cruise, 293. In case of a use, though the person to whom it is limited be not *in esse* when it is created, yet if he come *in esse* before or at the period at which it is to arise and operate, the use will be executed by the statute.—2 Greenl. Cruise, 286 ; 1 Lomax, 579–80.

2. The statute of uses was enacted in the 27th year of the reign of Henry VIII, (1547,) and is in force here.—Carter v. Balfour, 19 Ala. 829.

3. In conveyances deriving their operation from this statute, a child unborn may be the first *cestui que use ;* a freehold estate may be made to commence *in futuro ;* a fee may be limited on a fee ; and an estate may be limited in derogation, or abridgment, of a preceding estate, so as to defeat the same.—2 Greenleaf's Cruise, 136.

4. The appellants' counsel, assuming this deed to be a common-law conveyance, argue, that Thomas A. Sledge took

Horton v. Sledge.

a fee simple, determinable on his death before attaining the age of twenty-one years ; that the limitation over to his brothers and sisters is to take effect on the happening of that event, and therefore falls within the common-law principle, that a fee cannot be limited on a fee. Conceding this construction of the deed without stopping to inquire into its correctness, the application of the principle to conveyances of this character is denied. The principle invoked was never applied to any other than common-law conveyances : conveyances deriving their operation from the statute of uses, and devises, never were subjected to its influence.—1 Fearne on Remainders, 371 ; 1 Tucker's Blackstone, 88 ; 4 Kent, 132 ; 1 Lomax, 34 ; 1 Co. Litt. 395, note $w$ ; 1 Sanders on Uses, 113.

The reason of the rule renders it inapplicable to any other than a common-law assurance. Livery of seizin was necessary to the creation of a fee at common law ; therefore, if a qualification was annexed to a fee, which, on a certain contingency, would determine it before the period at which it would have expired without such qualification, and a fee was limited to another on the happening of such contingency, this last limitation was invalid for the want of livery of seizin. If the first fee was made to depend on a condition, and the subsequent fee was made to take effect on the breach of the condition, the last limitation would be a nullity, because the benefit of a condition can only be reserved to the grantor or his heirs ; and a condition broken does not, *ipso facto*, avoid an estate, but only renders it voidable at the election of the grantor or his heirs. This election can only be manifested by an entry for a breach of the condition. If there is an entry, the livery made at the creation of the first fee is thereby annulled, and the grantor or his heir is in as of his original estate—as if the first fee had never been created. The first fee being thus destroyed, that which was dependent on it must necessarily share the same fate.—1 Tucker's Blackstone, 88 ; 1 Lomax, 333, 359, 365 ; 4 Kent, 131, 212 ; 1 Smith's Leading Cases, 98. Again, when a fee was created, though base or qualified, it so completely comprehended the entire interest of the grantor, that there remained nothing in him to limit over. That which remained in him, if the fee

was qualified, was a mere possibility of reverter; which was not property, but mere matter of jurisdiction. If it was an estate on condition, the only interest remaining in him was a right to enter for a breach of the condition, the transfer or alienation of which would have offended the common-law principle forbidding the alienation of that which lieth in entry or re-entry.

These are the reasons given for the principle, that a fee cannot be limited on a fee; and a statement of them shows their applicability solely and exclusively to common-law conveyances. The principle is inapplicable to conveyances deriving their operation from the statute of uses, or from the statutes of the several States, and to devises, because such conveyances create estates by mere declaration or limitation, and consequently may destroy them by declaration or limitation.—1 Greenl. Cruise, 296. This deed is to be considered that species of conveyances (of which it has the essentials) which may be necessary to render all its limitations and provisions valid and operative. It cannot be considered a feoffment, for that species of conveyance never was in use here: all our conveyances derive their operation either from the English statute of uses, or from our act of 1812, (Clay's Digest, 156, § 35,) which only dispenses with livery of seizin in case of a deed of bargain and sale, lease and release, and covenant to stand seized to use. Livery of seizin never accompanied either of these conveyances, and has long since grown obsolete. This deed, then, must be regarded as operative either under the act of 1812, or under the English statute of uses. If it is not so regarded, it would be a nullity, not only so far as the limitation under consideration is concerned, but as a legal conveyance, for want of livery of seizin. All that is necessary, under either statute, to create an estate in lands, is a writing founded on sufficient consideration; and any limitation, which does not offend the perpetuity rule, may be introduced, and will be sustained. This is the natural and legal consequence of permitting an estate in lands to be created by writing, without any other formality or ceremony. A limitation, of the character of that under which the complainant deduces title, would be void in a common-law conveyance; because the estate of

Thomas A. Sledge could only be created by livery of seizin, and hence could only be avoided by some act equally notorious,—of equally dignity with that by which it was created. Entry was the only act, which the law deemed equally notorious, and of equal dignity with livery of seizin; and the consequence of entry was, the abrogation of the estate, with all its dependencies. A writing, however, before the statute of uses, raised a use which a court of equity would enforce; and the operation of the statute is to clothe that use with the legal seizin, thus converting into a legal estate that which was a mere equity. The use, being created by writing merely declaring it, could be avoided by writing declaring that it should be void; or it could be made to spring up, to shift from one person to another, on the happening of a future event. The reason, as given by Lord Lord Bacon, is this:—" Things may be avoided and determined by the ceremonies and acts like unto those by which they are created and raised: that which passeth by livery, ought to be avoided by entry; that which passeth by grant, by claim; that which passeth by way of charge, determineth by way of discharge; and so a use, which is raised but by declaration or limitation, may cease by words of declaration or limitation."—1 Greenleaf's Cruise, 296, 340.

5. The limitation, under which the complainant deduces title, is a shifting use.—1 Sanders on Uses, 113 ; 1 Lomax, 34, 579 ; 1 Greenleaf's Cruise, 293 ; 2 *ib*. 136 ; 4 Kent, 309; 1 Tucker's Blackstone, 139, 251.

6. The rule is admitted, that a court of equity will not decree partition on a disputed legal title, until the question of title has been tried at law. But, to bring a case within the operation of this rule, something more is necessary than a denial in the answer of the complainant's title. There must be an adverse title set up, before or at the time the bill for partition was filed ; or an adverse possession existing at that time ; or suspicious circumstances connected with the complainant's title.—1 Story's Equity, §§ 653, 749 ; Baring v. Nash, 1 Vesey & B. 556; Parker v. Gerard, Ambler, 236; Wisely v. Findlay, 3 Rand. 361, 398 ; Straughan v. Wright, 4 Rand. 493, and authorities cited by appellants' counsel. A court of equity will not interfere in the specified cases,

32

because a bill for partition is not a bill to settle conflicting rights, but to divide that which is held jointly or in common. If a joint tenant, or a tenant in common, merely deny the title of his co-tenant, this would not amount to an ouster, on which the co-tenant could maintain ejectment.—5 Burr. 2604; 3 Serg. & Rawle, 385 ; 5 Wheaton, 124 ; 5 Mass. 351 ; 1 Stewart, 512. In this case, the title of the complainant is clear, and arises under the same conveyance that creates the title of George H. Horton; and she could not have maintained ejectment against her co-tenant, to test the validity of her title. It is one of those cases in which partition under the decree of a court of chancery is a matter of right. If a mere denial of the complainant's title be held sufficient to stay the proceedings, and to turn the complainant round to a suit at law, (which, under the facts in this case, she could not have maintained when the bill was filed,) it will be in the power of every obstinate and litigious defendant to multiply suits and protract litigation at pleasure.

7. The objection of multifariousness is not well taken.— 2 Ala. 608 ; 2 Howard's (U. S.) R. 641.

8. George Horton should not be compensated for improvements made by him on the lands of which partition is sought. His answer shows, and the evidence establishes, that he took possession of the land, not only with notice of the complainant's title, but in subordination thereto. It is not shown that his improvements have enhanced the value of the rents and profits. His improvements were made for his own convenience, after his pretended purchase of complainant's interest from her father, in violation of the trust conferred on him by the deed. The authorities cited by his counsel, so far from sustaining his claim, fully sustain the decree of the chancellor. 10 Yerger, 477 ; 2 Rich. Eq. 317 ; 5 *ib*. 291.

ROBINSON & JONES, in reply.—Before the statute of 27th Henry VIII, a use was created by the owner of land conveying it by feoffment with livery of seizin, with a secret agreement that the feoffee should hold it for the use of the grantor, or of a third person.—2 Co. Litt. 570, note (*a*). Since that statute, uses may be created, 1st, by bargain and sale ; 2d, by a covenant to stand seized to uses ; 3d, by lease

and release; and, 4th, by a feoffment, with a declaration of uses following the *habendum*.—*Ib*. 578, note (*b*). From the description given of these several conveyances, the instrument now under consideration must be a feoffment, which, under our statute, carried with it livery of seizin. Neither of the first two conveyances operated by way of transmutation of the possession, which could only be effected by a feoffment with livery, or by lease and release. This instrument does effect that transmutation, and must therefore be a feoffment. 4 Kent's Com. 480–96; 2 Co. Litt. 578, note (*b*). The only effect of the statute 27th Henry VIII has been to destroy the intermediate estate of the feoffee, and to vest at once the legal title in the usee.—4 Kent, 296; 2 Co. Litt. 572, note (*dd*). If this be true, the same modes of conveyance are now used that were in use before the passage of that statute, and all that was then required to make a good conveyance to uses is still required. There are, therefore, three things necessary to the creation of a use : 1st, some person must be seized to the use of another person ; 2d, a *cestui que use in esse*; and 3d, a use *in esse*. If a conveyance wants either of these essentials, it cannot create a use.—2 Co. Litt. 572, note (*dd*). This deed is a feoffment to Thomas, effecting a transmutation of the possession to him ; and the conveyance is to him for his own use and benefit, and not for another. There are no words in the deed which, by any possibility, can raise even an implication of a use; for it is perfectly clear that the grantor intended Thomas himself to have the use and benefit of the land so long as he lived. There being, then, no declaration of a use in the deed, it fails in two of the essential requisites of a use ; there is not any person seized to the use of another, and there is no use *in esse*. There was, therefore, no present use created by the deed.

Nor does the deed create any future use, which requires all the essential requisites of a present use. If it be said that the complainant takes a shifting, or springing, or contingent use, who is the feoffee out of whose estate this use is carved? and where is the declaration in the deed that any person holds to her use? The gift to Thomas is immediate and direct, to hold possession for himself, without the intervention of any other feoffee ; and so of the remainder over. Without this

intervention of a feoffee, neither a present nor a future use can be created.—4 Kent, 296–9.

But it is said, that, although this is a feoffment with livery of seizin, it must operate as a covenant to stand seized to the use of the complainant. It is a sufficient answer to this, that there is nothing in the deed from which such an intention can be inferred ; and without such intention on the part of the grantor, the deed cannot so operate.—2 Hilliard on Real Property, 329 ; 4 Dess. 264 ; Blithman's case, 1 Dyer, 550, note 3 ; 4 Cruise's Digest, 107. A stronger reason is, that the deed left nothing in the grantor about which he could covenant, or upon which his covenant could operate. Having passed away his whole estate, he could not covenant that he would stand seized to the use of another. A man cannot, by one and the same conveyance, pass his whole estate to one, and covenant that he he will stand seized to the use of another. In a covenant to stand seized, it is absolutely indispensable that the estate should remain in the covenantor. 2 Hilliard, 332 ; Chidington's case, 1 Co. Rep. 154 a ; 1 Bla. Com. 338 (mar.) ; 4 Kent, 496.

There is no consideration to sustain the deed as a covenant to stand seized. The complainant is proved to be the great grand-daughter of the grantor ; and we have found no case in which a relationship so remote has been held sufficient. 3 Cruise's Digest, 107. In all the cases in which a feoffment was held to operate as a covenant, it was so held because the deed could not operate as a feoffment.—Doe v. Simpson, 2 Wilson, 22.

But, if it be a use, it is not executed by our statute.—Clay's Digest, 156, § 35 ; 1 Cruise's Digest, 349, note (1).

WALKER, J.—We think the chancellor erred in rendering a decree for a partition of the lands. Both George Horton and George H. Horton deny that under the deed of William Lanier any title could pass to the complainant, and that complainant's birth was anterior to the death of Thomas A. Sledge. The former of those two denials is the controversy of a pure and naked question of law. The latter is the controversy of a question of fact. In the case of Delony v. Walker, 9 Porter, 498, this court decided, without the previ-

ous intervention of a trial at law, a question of legal title arising under a statute, notwithstanding it was disputed in the defendant's answer to a bill for partition. The reasoning upon which that decision rests, applies to this case, so far as the question of title under Lanier's deed is concerned. A bill for partition must show title in the complainant ; and the court therefore could not pass upon a demurrer to a bill for want of equity, without deciding the propositions of law upon which the title, though legal, depends. In determining a question of title, turning alone upon the interpretation of a statute, or of a deed of undisputed validity, the court exercises a power not unlike that which is involved in the decision of a demurrer questioning the title set forth in the bill. Therefore, we conclude, that the dispute by the defendant in a suit for partition, of a pure question of law, determinable on the face of an uncontroverted deed, on which the complainant's title depends, is not a sufficient reason for withholding or delaying a decree for partition.

But in this case the defendant denies the fact, that complainant was born before Thomas A. Sledge died. Upon the question raised by this denial, the defendant was entitled to a jury trial; and the law, as recognized in the books, forbids that the chancellor shall proceed to make partition without a trial at law, when the complainant's title is legal, and controverted upon such a ground. Indeed, the decision in Delony v. Walker, rests upon the reason given for it, and the manifest convenience and propriety of the rule laid down, rather than upon its entire consistence with all the authorities. The complainant's title is legal, and the fact upon which it depends is denied ; and that title ought to have been subjected to a trial at law, before a decree for partition was rendered. We think the correct practice in such a case is, to stay proceedings until a trial can be had at law. If the practice should be to dismiss partition suits upon the denial of the complainant's title, the rights of parties bringing such suits would be at the mercy of an unscrupulous respondent. The authorities are generally in favor of retaining the bill, and delaying the suit until a trial can be had at law.—Delony v. Walker, *supra;* Wilkin v. Wilkin, 1 Johns. Ch. R. 111 ; Phelps v. Green, 3 *ib.* 305 ; Straughan v. Wright, 4 Rand.

495 ; Wiseley v. Findlay, 3 *ib.* 370 ; White & Tudor's Leading
Cases, vol. 2, part I, marg. page 354, (71 Law Library, top
page 536) ; Bruton v. Rutland, 3 Humph. 455 ; Garrett v.
White, 3 Iredell's Eq. 131 ; Manners v. Manners, 1 Green's
(N. J.) R. 384. We think the facts stated in the answers,
and the denials contained in them, are equivalent to an actual
ouster. But, as the defendants subject the complainant by
their denials of her title to the necessity of a suit at law, we
deem it proper that she should be free from all embarrass-
ment with the question of ouster; and we therefore direct that,
unless the defendants will admit that the complainant was
born before the death of Thomas A. Sledge, the chancellor
shall require the defendants, or either of them, against whom
suit at law may be brought pending this cause for the recovery
of the land in controversy, to admit the ouster of the com-
plainant upon the trial at law. The case of Garrett v. White,
*supra*, is an authority for the making of such a requisition ;
and such a course is consonant with reason and justice. As
to what constitutes an ouster among tenants in common, see
Smith v. Dunn, ex'r, 27 Ala. 315 ; Edwards v. Bennett, 10
Iredell's Law, 361 ; Doe, *ex dem.* Anders, v. Anders, 9 *ib.* 214 ;
Abercrombie v. Baldwin, 15 Ala. ; Tillinghast's Adams on
Ejectment, 54, note 1.

The appellants assign for error in this court the refusal of
the chancellor to sustain the demurrers contained in the
answers. The grounds of demurrer are, the misjoinder of
the parties defendants, multifariousness, and want of equity
in the bill. The first two objections, so far as they concern
George and George H. Horton, are both determined by
ascertaining whether the causes of action against those two
defendants can be joined. If they can, the bill is not multi-
farious ; nor is there a misjoinder of parties, as to them.

In our opinion, the bill is not multifarious. In the account
for rents, the defendants are both interested. In the parti-
tion of the land, George Horton has no direct and immediate
interest, but he has an indirect interest in it. If the com-
plainant has a right to partition, she will be entitled also to
an account for rent against her tenant in common. The de-
fendant, George Horton, held for the tenant in common, and
for the persons who may be entitled to the other undivided

moiety. George Horton and George H. Horton have, since the latter attained majority, been in possession of different parcels of the land. George Horton claims, since the death of Thomas A. Sledge, to have held the land for George H. Horton alone. In the rents and profits in George Horton's hands George H. Horton is interested ; and George Horton is interested in the account against George H. Horton, because, to the extent to which the latter may be charged for rents, the former will be relieved from accounting. It is thus manifest, that the accounts against the two are so connected, that the one cannot well be taken without the other. Besides, the liability of George Horton to account with the complainant depends upon precisely the same facts and questions with the right of partition in the complainant. The defense of George Horton against an accountability to the complainant for rents, and the defense of George H. Horton against the prayer for partition rest upon common ground, and grow out of facts the same in every way. The title, upon which complainant claims against both, is precisely the same ; and from the establishment of the right of partition the liability of both the defendants to account results. In such a case, we think we are sustained by the authorities, in concluding that the bill is not multifarious.—Halstead v. Sheppard, 23 Ala. 568 ; Gaines and Wife v. Chew, 2 Howard's U. S. R. 619.

We now proceed to consider the question of the equity of the bill raised by the demurrer. The decision of that question turns upon the construction of the deed of William Lanier. If the complainant has any title, it is derived from it.

The deed conveys a fee in a moiety of the land to Thomas A. Sledge ; and in the event of his death before his majority, to his brothers and sisters in fee ; and if he leaves no brothers, to George H. Horton. Under the old common law, the limitation over to the brothers and sisters after the death of Thomas A. Sledge, during minority, would not be a good remainder. A remainder could not be limited upon a contingency, which would abridge or defeat the particular estate ; and a fee could not be limited on a fee, or, in the language of some of the books, a fee could not be mounted on a fee.—Fearne on Remainders, § 3, p. 10 to 20 ; ib. p. 373, 271, §7, 261, 248, 390, 391, 392 ; 2 Thomas's Coke, first American from the last Lon-

don edition, (1827) top p. 1, marg. p. 201, note A ; 1 *ib.* top p. 583, marg. p. 504; 2 Blackstone's Commentaries, 155, 156, 175, note 20.

The authorities are also clear that, in conveyances under the statute of uses, a conditional limitation (which is the denomination of a limitation over to take effect in abridgment of the particular estate) may be created, and that a fee may be limited on a fee determinable on condition.—See authorities above ; Note 20 to p. 175, 2 vol. Wendell's edition of Blackstone ; 4 Kent's Commentaries, 249, 250 ; Simmons v. Augustin, 3 Porter, 69.

The English statute of uses was enacted "before the emigration of our ancestors to America; is applicable to our situation, and not inconsistent with our institutions and government; and has been generally recognized and acted upon by the courts of this country, and therefore constitutes a part of the common law" of Alabama, and is in force unless repealed. Carter and Wife v. Balfour's Adm'r, 19 Ala. 829 ; Simmons v. Augustin, *supra.* Besides, our own statute is strikingly similar, and perhaps in effect the same, with the English statute.—Simmons v. Augustin, *supra.*

The deed appears upon its face to have been made upon consideration of natural love and affection for the grantees, who are the grantor's great grand-children, and of five dollars paid. The words of conveyance are, "give, grant, bargain, sell, alien, enfeoff and convey." It is disputed by the counsel for appellants, that a deed upon such a consideration, with such words of conveyance, can be deemed a conveyance under the statute of uses. In Greenleaf's Cruise on Real Property, 140, § 10, the law is thus laid down : "If a man, in consideration of natural love and affection, and of money, gives, grants, bargains, sells, enfeoffs and confirms to B. in fee, by deed indented, with a letter of attorney in the deed to make livery, and the deed is after enrolled in six months ; this shall pass as a bargain and sale, notwithstanding the letter of attorney in the deed. For the feoffor has given the feoffee an election to execute the estate one way or the other, and that way which first executes the estate shall stand." In 2 Lomax's Digest, 192, it is said : " When a deed may enure in different ways, the person to whom it is made may have his election

which way to take it. Thus, if a deed be made by the words *dedi et concessi*, this in law may amount to a grant, feoffment, gift, lease, release, confirmation or surrender; and it is in the choice of the grantee to plead or use it in the one way or the other." Again, the same author says, on page 191, "Where a deed cannot operate in the manner intended by the parties, it will be construed in such a manner as to operate in some other way. *Quando quod ago, non valet ut ago, valeat quantum valere potest.* In consequence of this principle, it has been determined, that a deed which was intended to operate as a lease and release, or bargain and sale, but could not take effect in that manner shall operate as a covenant to stand seized." It is also held, that a conveyance in form a deed of bargain and sale, although upon consideration of love and affection, will be classed with some other species of conveyances under the statute of uses, "*ut res magis valeat quam pereat.*"— 2 Lomax's Dig. 191; Sprague v. Woods, 4 Watts & Serg. 192; 2 Greenleaf's Cruise on Real Property, 115, 116, 107, 108, 109. From the authorities quoted, and from those cited below, we conclude, that the following are unquestionably correct propositions of law: 1. If the deed in this case cannot operate otherwise, it will be deemed, for the purpose of upholding it, a conveyance under the statute of uses. 2. If it cannot operate as a deed of bargain and sale, because its consideration is natural love and affection, it will be deemed a covenant to stand seized, or some other of the conveyances under the statute of uses; and 3. A covenant to stand seized is maintainable upon the consideration of the natural love and affection of a grand-parent.—Simmons v. Augustin, *supra;* Marshall v. Fisk, 6 Mass. Rep. 24; Rowlets v. Daniel, 4 Munford, 473; Jackson v. Swart, 20 Johnson, 85; Barrett v. French, 1 Conn. 362; French v. French, 3 N. Hamp. 234, in which will be found a full discussion of the entire subject. If the deed in this case may be considered a covenant to stand seized to the use, or any other of the conveyances which grow out of the statute of 27 Henry VIII, the limitation over upon the death of Thomas A. Sledge during his minority must be sustained upon principles herein before set forth.

It is true, as contended by the counsel for the appellants, that to sustain conveyances to uses there must be a person

seized to the use, and there must be a *cestui que use in esse*. At
one time the courts puzzled themselves with the question,
where is the seizin, which is to support the limitation over
by way of use, in such a case as this? The grantor, it was
said, had divested himself of all possession, and could not be
seized to the use of him in remainder; and he, upon the defeat
of whose estate the limitation over was to take effect, was
himself but a *cestui que use*. It was finally concluded, that
the limitation over is supported by a possibility of seizin, re-
maining with the grantor, until the contingency upon which
the remainder is limited, occurs.—See Note A, Thos. Coke,
marg. p. 576, top p. 676 ; 4 Kent's Com. 237 to 252. These
authorities also show that it is sufficient, that the person who
is to take the limitation over should be in *esse* when the con-
tingency happens.

From what is said above it follows, that upon the facts
stated in complainant's bill, she has a title to an undivided
moiety of the land in litigation, and that the bill contains
equity.

The demurrer on the ground that Washington and Sally
Sledge are made parties defendants, was properly overruled.
They were unnecesary and improper parties, because they had
no interest in the suit ; but it is an objection of which the other
defendants cannot avail themselves.—Story's Eq. Pl. § 544 ;
*ib*. 264, § 237 ; Hunley v. Hunley, 15 Ala. 91 ; Toulmin v.
Hamilton, 7 Ala. 370 ; Erwin v. Ferguson, 5 Ala. 158.

Here we might close this opinion ; but as the case must be
remanded, and as the question of George Horton's right to
compensation for permanent and valuable improvements may
again arise in the further progress of the case, we deem it
proper to lay down the legal principles, which we think ought
to govern the court below in its action upon that subject.
George Horton can in no event be entitled to compensation
for improvements made beyond the rents charged against
him ; nor can he be entitled to compensation for any improve-
ments, unless made at a time when he really and *bona fide* be-
lieved himself to be the true owner of the land, and unless
he was induced to make those improvements by that belief
really entertained. He will not be entitled to any compensa-
tion for improvements, if made when he knew his title was

disputed.   Under the answer, George Horton can have no
allowance for improvements, unless they may have been made
by him after he made the purchase from Joel M. Sledge, and
before he was apprised that his title was disputed ; and then
only if the circumstances indicated above concur.   We have
consulted and refer to the following authorities in support of
our positions in reference to the question of improvements :
Barlow v. Bell, 1 A. K. Marshall, 246 ; Bell's Heirs v. Bar-
net, 2 J. J. Marshall, 516 ; 1 Story's Eq. Jurisprudence, 729,
§ 655 ; Parkhurst v. Van Courtlandt, 1 J. C. R. 273 ; Wen-
dell v. Van Rensalaer, *ib.* 354 ; Town v. Needham, 3 Paige's
Ch. 554 ; Smith v. Brown, 3 Richardson's Eq. 299 ; Thurs-
ton v. Dickinson, 2 *ib.* 317 ; Gunn v. Brantley, 21 Ala. 646 ;
Goodwin v. Lyon, 4 Porter, 316.

We lay down the above principles, upon the assumption
that no improvements were made before the death of Thomas
A. Sledge.   We are not at all certain from the record that
the defendant intends to claim any improvements to have
been made before that time ; and we do not intend to express
any opinion as to whether George Horton may be entitled to
compensation for such improvements, and if he made them,
what would be the measure of that compensation.   We deem
it proper to add, lest we might be misunderstood, that Apples
Sledge would only be chargeable with one half of any im-
provements made by George Horton.   The charge for the
other half of such improvements must be a matter to be set-
tled between him and George H. Horton.

The decree of the chancellor is reversed, and the cause re-
manded for further proceedings in accordance with the prin-
ciples laid down in the foregoing opinion.


George Horton, who filed the cross-bill, was entitled to no
relief upon the facts alleged.   It is contended, in the first
place, that Apples Sledge must be compelled to elect, whether
she will take the negro conveyed to her by her father, or the
rents due by George Horton to her.   Conceding that an
election could be forced upon an infant, the doctrine has no
application here.   The contract for the purchase of the land
of Apples Sledge from her father by the appellee has been
rescinded ; and by the contract of rescission it was agreed,

that Horton should have the proceeds of the sales of certain goods, and an indemnity against his liability for rent to Apples Sledge, in discharge of the debt to him for the reimbursement of the money paid for the land. It appears from the bill that, before the rescission of this contract, the father of Apples Sledge had made a deed to her of a certain negro woman, in payment of the money received on the sale of her land to George Horton. By the rescission of the contract for the purchase of the land from the father of Apples Sledge, and by making a contract for the discharge of the debt due him for the purchase money he had paid, George Horton stood, in reference to Apples Sledge, as if he had never bought the land, and had never paid for it. He was relieved from the purchase, and voluntarily accepted certain goods and a promise of indemnity as an equivalent for the money he had paid. It is, therefore, a matter of no concern to him, whether Apples Sledge shall retain the negro conveyed to her by her father. If any person has a right to complain, it is her father. The fact that she has received from her father, and wrongfully retains the negro against him, does not lessen, or in any wise affect, her rights against Horton. If there is anything in the detention of the negro inconsistent with the rights of the creditors of the father of Apples Sledge, and Horton is a creditor, he must proceed in the mode pointed out by law to subject the property to the payment of the debt. If Apples Sledge were compelled in this case to elect between retaining the negro and prosecuting her claim for rents against Horton, she would hold on to the negro, if more valuable than the prospective recovery against Horton. In that event, Horton would get as a gratuity the entire rents of the half of the land, to which he has no pretense of right. It is thus seen that the application of the doctrine of election might operate unjustly and unreasonably.

The argument that George Horton is entitled to be subrogated, or substituted, to the right of Apples Sledge to the negro, is obnoxious to several objections; but we shall notice only one, which seems fatal to it. The deed of her father conveys to Apples Sledge the negro, and her increase, subject to the condition, that the property is to remain with the grantor until the grantee shall attain the age of 18 years;

Horton v. Sledge.

and upon certain contingencies the slave was to go to her brothers and sisters. Now, under the doctrine of substitution, the party substituted accedes to the rights of the person into whose place he comes. By substitution one person is placed in the shoes of another, and he acquires rights neither greater than nor different from the rights of that other person. If George Horton were subrogated to the rights of Apples Sledge in reference to the negro woman, he would get an interest in the specific property corresponding with that conveyed by the deed. A creditor would obtain an appropriation of specific property towards his debt, and that, too, without any estimate of its value. Such a result has no precedent or sanction in our law.—Foster v. Trustees of the Atheneum, 3 Ala. 302.

This court has no right to convert an absolute conveyance in payment of an obligation to one person, into a mere security for the debt of another.

For the reasons above stated, we think the cross-bill does not make out a case for any relief for the complainant; and therefore the decree of the chancellor is reversed, and a decree must be here rendered, dismissing the said cross-bill, and the appellee must pay the costs of this court, and of the court below.